Sharon **ROHRBACH, et al., Plaintiffs,**

v.

**AT & T NASSAU METALS CORP.,
et al., Defendants.**

Civ. A. No. 3:CV–89–1268.

United States District Court,
M.D. Pennsylvania.

May 17, 1995.

524

Robert J. Sugarman, Sugarman & Associates, Philadelphia, PA, for plaintiffs Sharon Rohrbach and Gary Rohrbach, parents and natural guardians, Saura Rohrbach, a minor, Dean Oberst and Deborah Oberst, parents and natural guardians, Ryan Oberst, a minor, Thomas Rock, Dorothy Rock, Chester Cenzar, Katherine Cenzar.

Richard H. Willis, Stephen G. Morrison, John S. Williams, Columbia, SC, Joseph M. Melchers, Columbia, SC, Lewis Walter Tollison, III, Columbia, SC, Cody H. Brooks, Kreder, Brooks, Hailstone & Ludwig, Scranton, PA, for defendant Nassau Metals Corp.

Andrew J. Primerano, Jr., Kennedy and Lucadamo, Hazleton, PA, for defendants C & D Recycling, Inc., Joseph Benner.

Richard H. Willis, Stephen G. Morrison, John S. Williams, Columbia, SC, Joseph M. Melchers, Columbia, SC, Lewis Walter Tollison, III, Columbia, SC, Cody H. Brooks, James J. Wilson, Kreder, Brooks, Hailstone & Ludwig, Scranton, PA, for defendant American Tel. & Tel. Co.

## MEMORANDUM

VANASKIE, District Judge.

By Motion filed November 14, 1994, plaintiffs requested that the Honorable James F. McClure, Jr. disqualify himself from this protracted litigation and vacate all Orders he had entered. By Memorandum and Order dated November 22, 1994, Judge McClure granted the recusal request, but refused to vacate his prior Orders. On December 7, 1994, after this matter had been reassigned, plaintiffs moved for reconsideration of Judge McClure's refusal to vacate his Orders. Because Judge McClure's recusal on the basis of an appearance of partiality taints his largely discretionary decisions concerning scope of discovery, which, in turn, may have affected his summary judgment rulings, plaintiffs' motion will be granted and all Orders issued in this matter by Judge McClure will be vacated.

## BACKGROUND

This litigation stems from the operation of a metals reclamation facility located in Foster Township, Luzerne County, Pennsylvania. Prior to 1985, the facility was operated by defendant C & D Recycling, Inc. ("C & D"), and its predecessor-in-title, Lurgan Corporation. In 1985, the facility was placed on the National Priority List of Superfund sites compiled under the authority of the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601, *et seq.* ("CERCLA").

Plaintiffs, ten individuals, seek damages for injuries purportedly caused by alleged migration of hazardous substances from the Lurgan/C & D site onto their adjacent properties. In their amended complaint filed on April 25, 1990 (Docket Entry 33), plaintiffs assert common law claims of trespass, nuisance, negligence, strict liability, negligent and intentional infliction of emotional distress, and medical monitoring, as well as statutory claims under CERCLA, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961, *et seq.* (the "Racketeering Act"), and the Pennsylvania Hazardous Sites Clean Up Act, 35 Pa.S.A. §§ 6020.101, *et seq.* ("HSCA").

Named as defendants are C & D, one of its principal owners, Joseph Brenner, AT & T Nassau Metals Corporation ("Nassau"), and American Telephone and Telegraph Company ("AT & T"). Lurgan Corporation was also named as a defendant, but apparently was not served and is defunct. Since June of 1992 C & D and Mr. Brenner have been proceeding without counsel.

Nassau was a wholly-owned subsidiary of Western Electric Company, Inc., which in turn was a wholly-owned subsidiary of AT & T. Plaintiffs' claims against Nassau and AT & T are premised upon the assertion that they had "arranged to have material which contained hazardous substances" transported to the Lurgan/C & D site for treatment and disposal.

This litigation has been replete with the rancor and venom that bring disrepute to the legal profession. The extensive and protracted discovery proceedings have spawned numerous disputes. Judge McClure had issued more than a score of discovery rulings. In two Orders issued September 29, 1992, Judge McClure disposed of almost forty motions. Understandably exasperated, Judge McClure, on March 1, 1994, forbade the filing of additional motions until he could resolve six motions for partial summary judgment which had been filed by Nassau and AT & T.

In a series of rulings issued in June and September of 1994, Judge McClure disposed of the pending partial summary judgment motions. It appears that those decisions reduced plaintiffs' claims significantly. According to Nassau and AT & T, this litigation is now limited to:

(a) A claim of trespass and nuisance since August 31, 1987, against Nassau;

(b) personal injury and emotional distress claims against Nassau by minor plaintiffs Ryan Oberst and Saura Rohrbach; and

(c) a CERCLA and HSCA "response cost" claim against Nassau and AT & T. [Nassau

and AT & T status report (Docket Entry 846) at 28.][1]

As noted above, Judge McClure had precluded the filing of motions pending his disposition of the partial summary judgment motions. In his Order # 3 of September 30, 1994, Judge McClure established the procedures and limitations for the anticipated reconsideration motions. His Order also established the deadline for filing motions in limine, and directed that "[e]ach motion in limine shall address a single evidentiary matter. . . ."

Consistent with the parties' prior practice in this case, eleven motions for reconsideration of the summary judgment rulings were filed, six on behalf of plaintiffs and five on behalf of Nassau and AT & T. The parties have filed 120 motions in limine, with Nassau and AT & T filing 115 such motions on November 15, 1994.

The day before Nassau and AT & T filed their *in limine* motions, plaintiffs moved for the recusal of Judge McClure. Plaintiffs' motion was based upon the relationship of Judge McClure and his wife to Buffalo Valley Telephone Company ("BVT"), a local ex-

1. In his Order # 3 of September 30, 1994, Judge McClure summarized the status of this case as follows:

The status of each count of the complaint is as follows:

*Count One (CERCLA):* The court has dismissed plaintiffs' claims for medical monitoring, but this count otherwise remains. Order of Court # 1 dated September 30, 1994.

*Count Two (PaHSCA):* The court has dismissed plaintiffs' claims for medical monitoring, but this count otherwise remains. Order of Court # 1 dated September 30, 1994.

*Count Three (RICO, § 1962(a)):* The court dismissed this count as to defendants AT & T and AT & T Nassau. Order of Court # 2 dated June 22, 1994.

*Count Four (RICO, § 1962(c)):* The court dismissed this count as to defendants AT & T and AT & T Nassau. Order of Court # 2 dated June 22, 1994.

*Count Five (RICO, § 1962(d)):* The court dismissed this count as to defendants AT & T and AT & T Nassau. Order of Court # 2 dated June 22, 1994.

*Count Six (Negligence; denominated in error as a second Count Four):* The court dismissed this claim as time-barred. Order of Court # 2 dated June 21, 1994.

*Count Seven (Strict Liability; denominated in error as a second Count Five):* The court dismissed this claim as time-barred. Order of Court # 2 dated June 21, 1994.

*Count Eight (Nuisance; denominated in error as Count Six):* This count remains. Order of Court # 2 dated June 21, 1994.

*Count Nine (Trespass; denominated in error as Count Seven):* This count remains. Order of Court # 2 dated June 21, 1994.

*Count Ten (Intentional Infliction of Emotional Distress; denominated in error as Count Eight):* The court dismissed this claim as time-barred. Order of Court # 2 dated June 21, 1994.

*Count Eleven (Negligent Infliction of Emotional Distress; denominated in error as Count Nine):* The court dismissed this claim as time-barred. Order of Court # 2 dated June 21, 1994.

It should be noted that the claims dismissed as time-barred remain valid as to the minor plaintiffs. However, the court otherwise dismissed Counts Six through Eleven, inclusive, as to AT & T, and Count Ten as to AT & T Nassau. Order of Court # 1 of June 22, 1994; Order of Court # 4 dated June 22, 1994.

change carrier operating in central Pennsylvania.

Prior to his appointment to this Court, Judge McClure had served as Vice Chairman, Secretary and Director of BVT, and owned an interest in BVT. Following his appointment to this Court, he resigned his positions with BVT, but was replaced as a director by his spouse. It appears that BVT is both a competitor of AT & T and has various "interconnect" and contractual relationships with AT & T. During his Senate Confirmation hearings, Judge McClure stated that in light of his relationship with BVT he would recuse himself "from hearing any matters involving telecommunications...." Plaintiffs complained, *inter alia*, that Judge McClure had failed to disclose to the parties his interest in BVT and his spouse's position with BVT, and that he had breached his commitment to recuse himself in matters involving telecommunications.

Without awaiting receipt of a response from Nassau and AT & T to plaintiffs' motion for disqualification, Judge McClure recused himself. His decision was based on 28 U.S.C. § 455(a), which, in pertinent part, provides that "[any ... judge ... of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Judge McClure reasoned that an objective person might reasonably harbor doubts concerning his impartiality in view of his family's financial interests in BVT and his failure to disclose those interests.

While granting the request for recusal, Judge McClure summarily rejected the demand that he vacate all of his prior Orders, stating:

> Such a notion is absurd. A number of discovery and scheduling matters, dispositive motions, etc., have been considered by the Court. Vacating all of our prior Orders essentially would restart the case in its entirety. Nor will we certify the matter to the Court of Appeals, as requested. The judge to whom the case is assigned may, as appropriate, vacate our prior orders as he or she deems fit when consider-

ing the various motions for reconsideration. [November 22, 1994 Memorandum (Docket Entry 736) at 11.]

Plaintiffs now request reconsideration of the refusal to vacate all Orders previously issued by Judge McClure in this matter. Alternatively, plaintiffs ask that the denial of *vacatur* be certified for interlocutory appeal.[2]

### DISCUSSION

#### A.

■ "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3rd Cir.1985), *cert. denied,* 476 U.S. 1171, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986). As explained in *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.,* 99 F.R.D. 99, 101 (E.D.Va.1983):

> The motion to reconsider would be appropriate where, for example, the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court. Such problems rarely arise and the motion to reconsider should be equally rare.

*See also Weinstein v. Friedman,* 859 F.Supp. 786, 790 (E.D.Pa.1994); *Reich v. Compton,* 834 F.Supp. 753, 755 (E.D.Pa.1993); *Vartan v. Harristown Development Corp.,* 661 F.Supp. 596, 607 (M.D.Pa.1987), *aff'd mem.,* 838 F.2d 1206, 1208 (3rd Cir.1988).

Our Court of Appeals has instructed that the question of whether a pre-trial recusal should result in a *vacatur* order depends upon a balancing of the following factors:

(1) The risk of injustice to the parties;

(2) The risk that the denial of *vacatur* will lead to unjust results in other cases; and

(3) The risk of undermining public confidence in the administration of justice.

---

**2.** Nassau and AT & T moved for reconsideration of the recusal decision. By Order dated May 15, 1995, this motion for reconsideration was denied.

*In re School Asbestos Litigation,* 977 F.2d 764, 785 (3rd Cir.1992).

■ Judge McClure's refusal to vacate his prior orders does not reflect a reasoned application of the requisite balancing approach. Instead, his brusque treatment of the issue suggests a visceral reaction to the suggestion that a recusal motion filed four years after this litigation was assigned to him could render nugatory his extensive efforts in addressing scores of motions and dealing with the contentious counsel. While Judge McClure's frustration at being confronted with the specter of wiping out his conscientious handling of this difficult case is understandable, his failure to address the factors pertinent to a *vacatur* decision constrains me to consider the matter *de novo.*

### B.

The balancing approach adopted by our Court of Appeals to address the impact of a recusal decision made prior to trial was established by the Supreme Court in the context of a recusal challenge advanced for the first time after judgment had been entered. In *Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988), District Judge Collins had been a member of the Board of Trustees of Loyola University when he was handling litigation between Liljeberg and the Health Services Acquisition Corporation ("HSAC") pertaining to the ownership of a certificate of need for operation of a hospital. At the time the litigation was pending before Judge Collins, Liljeberg was negotiating with Loyola to acquire land on which to build the hospital. This transaction could proceed only if Liljeberg had a certificate of need. Following a bench trial, the district judge ruled in favor of Liljeberg and a divided Court of Appeals for the Fifth Circuit affirmed. Ten months after the appellate court's affirmance, HSAC learned that Judge Collins had been a member of Loyola's Board of Trustees. HSAC moved pursuant to Federal Rule of Civil Procedure 60(b)(6) to vacate the judgment. Judge Collins denied this motion, and HSAC appealed. The appellate court remanded the matter to a different judge to make factual findings concerning the extent and timing of

Judge Collins' knowledge of Loyola's interest in the outcome of the certificate of need litigation. On remand, it was determined that Judge Collins had not been cognizant of Loyola's interest in the outcome of the litigation at the time of the trial. The Court also concluded, however, that there was an appearance of impropriety arising out of Judge Collins' membership on the Board of Trustees. Because Judge Collins was unaware of the conflict of interest at the time he issued his decision, the Rule 60(b) motion was denied. The appellate court reversed, and the Supreme Court granted *certiorari.*

Observing that "[s]cienter is not an element of a violation of [28 U.S.C.] § 455(a)," the Court held that while the district judge's "failure to disqualify himself was the product of a temporary lapse of memory, it was nevertheless a plain violation of the terms of the statute." 486 U.S. at 859, 861, 108 S.Ct. at 2202, 2203. In concluding that retrospective relief is appropriate for such an unwitting violation of § 455(a), the Court explained that a district judge "is called upon to rectify an oversight and to take the steps necessary to maintain public confidence in the impartiality of the judiciary." *Id.* at 861, 108 S.Ct. at 2203. The Court elaborated:

> When a busy federal judge concentrates his or her full attention on a pending case, personal concerns are easily forgotten. The problem, however, is that people who have not served on the bench are often all too willing to indulge suspicions and doubts concerning the integrity of judges. The very purpose of § 455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible. *Id.* at 864–65, 108 S.Ct. at 2204–05.

The Court then instructed that "it is critically important in a case of this kind to identify the facts that might reasonably cause an objective observer to question [the district judge's] impartiality." *Id.* at 865, 108 S.Ct. at 2205. After reviewing the evidence, the Court noted that if the district judge been cognizant of the interest of Loyola in the outcome of the litigation, disqualification prior to entry of the judgment would have been essential. The Court also found that it

was significant that the district judge had failed to acknowledge his awareness of facts warranting his recusal when he learned of facts that should have alerted him to the conflict of interest within ten (10) days after entry of the judgment in favor of Liljeberg. These circumstances, according to the Court, warranted setting aside the judgment.

As noted above, the approach taken in *Liljeberg* has been deemed applicable to the effect of a recusal decision made prior to trial. *In re School Asbestos Litigation,* 977 F.2d at 785. In that case, the appellate court addressed a mandamus petition contesting the district judge's refusal to disqualify himself from a protracted nationwide products liability class action. The grounds for disqualification concerned the district judge's attendance at an asbestos educational conference sponsored by plaintiffs' counsel and paid for by escrowed funds from prior settlements in the class action. Our Court of Appeals concluded that the district judge's attendance at "a predominantly pro-plaintiff conference on a key merits issue" might cause a reasonable person to question the district judge's ability to remain impartial. *Id.* at 781–82.

The court then addressed the question of whether retroactive effect should be given to its issuance of a writ of mandamus by vacating the numerous orders that had been issued since the disqualifying event occurred. The district judge had issued approximately 70 pre-trial orders after the filing of the disqualification motion, which was presented ten months after the occurrence of the disqualifying event. Significantly, not a single party requested that all orders entered after the disqualifying event be vacated. Indeed, no party asked that the court vacate all orders entered after the filing of the disqualification motion.

Some of the parties who had moved for disqualification asked that at least the orders denying their summary judgment motions be vacated. The Third Circuit declined this request, observing that they would be fully reviewed on appeal and "[t]o vacate all those rulings now and to order full reconsideration by the incoming district judge would entail enormous cost to the parties and to the judicial system with little corresponding gain."

As to "[t]he largely discretionary orders affecting trial structure," however, the appellate court authorized the incoming judge to reconsider such rulings at his or her discretion. *Id.*

■ The lessons that emerge from *Liljeberg* and the *School Asbestos Litigation* are:

First, the balancing of the risk of injustice in the matter *sub judice,* the risk of injustice in other cases, and the risk of undermining confidence in the judicial process must be undertaken in the context of the facts giving rise to the disqualification decision. *See Scott v. United States,* 559 A.2d 745, 754 (D.C.App.1989) (*en banc*).

Second, "especially in complex litigation, *vacatur* of rulings ought to be as limited as possible while remaining consistent with the purposes of § 455." *School Asbestos Litigation,* 977 F.2d at 786.

Finally, failure to vacate a prior ruling "*may* be harmless error when a court of appeals will later review a ruling on a plenary basis." *Id.* [Emphasis added.]

■ In this case, Judge McClure concluded that an objective observer might reasonably question his impartiality based on his previously undisclosed substantial ownership interest in a local exchange telephone company that necessarily has business relationships with AT & T. Judge McClure had recognized that the inter-relationships common in the telecommunications industry warranted a commitment on his part to recuse himself from any litigation "involving telecommunications." From the perspective of a judge and lawyer, this litigation does not involve a "telecommunications issue." Of course, the vantage point from which disqualification and resulting *vacatur* must be assessed is not that of the lawyer or judge, but that of the objective lay person. From such a vantage point, this case can be viewed as involving the telecommunications industry and "telecommunications issues." For example, the issues include whether telecommunications cable and equipment can cause the type of contamination alleged here. Thus, while a judicial officer may not regard this case as "involving telecommunications," such a per-

ception may not be shared by the public. On the contrary, the public may perceive Judge McClure's approach as overly "legalistic."[3] As expressed in *Liljeberg*, "[t]he problem ... is that people who have not served on the bench are often all too willing to indulge suspicions and doubts concerning the integrity of judges." 486 U.S. at 864–65, 108 S.Ct. at 2205.

The existence of a substantial relationship with a local telephone company and the commitment not to handle matters "involving telecommunications," considered in the context of a failure to disclose those matters at the outset of Judge McClure's handling of this litigation, create what Judge McClure regarded as the kind of appearance of impropriety that § 455(a) was intended to prevent. This appearance of impartiality, although not as compelling as that found in *Liljeberg*, is sufficient to cast a shadow on the rulings made in this case.

In this regard, it is significant that *Liljeberg* was decided in the context of a motion made ten months after plenary review of the district court's decision had resulted in affirmance, albeit by a divided appellate court. Application of the three-part test may not be as rigorous in this context as it is in the context of a Rule 60(b)(6) motion. *Cf., United States v. Kelly*, 888 F.2d 732, 747 n. 27 (11th Cir.1989) ("the standard for reversal on appeal in cases involving § 455(a) violations may not be as stringent as the three-part test enunciated in *Liljeberg* ").

While this case involves difficult issues and has been bitterly fought, it does not approach the complexity of the *School Asbestos Litigation*. Vacating Judge McClure's rulings in this case thus does not present the same problems as might be expected to be encountered in the "tremendously ... huge yet fragile" *School Asbestos Litigation. Id.* at 787.[4]

Finally, while a number of Judge McClure's rulings will be subject to plenary review on appeal, plaintiffs forcefully argue that the context for those rulings was shaped by largely discretionary discovery decisions. Such discretionary rulings are subject to deferential review on appeal. In the *School Asbestos Litigation*, the Court did not indicate that any party had contended that summary judgment rulings had been shaped by limitations on discovery. Thus, the fact that summary judgment decisions in the *School Asbestos Litigation* were not vacated does not preclude *vacatur* under the circumstances presented here.

When considered in the context of the facts giving rise to the recusal decision, the nature of the issues in this case, and the potential impact discretionary discovery rulings may have had on summary judgment decisions, the risk of injustice to the plaintiffs in not vacating the prior rulings appears substantial. Discretionary discovery rulings, no matter how unbiased a judge is, are necessarily tainted by the appearance of impartiality that is sufficient to warrant disqualification. Unless each of Judge McClure's rul-

---

3. Judge McClure explained that he did not disclose the substantial interest held by him and his wife in BVT because this matter did not involve the telecommunications industry. He explained that an accident involving an AT & T truck would not warrant a disclosure of his interest in the local exchange carrier. There is, however, a critical difference between the motor vehicle accident analogy and this litigation. This case concerns industry disposal practices in the context of accusations of fraud and conspiracy. The focus is not limited to the operator of a motor vehicle or those persons who may not have adequately supervised the motor vehicle operator. Instead, the focus is on purportedly pernicious conduct that allegedly interfered with regulatory agencies, imperiling the health and safety of those residing in the vicinity of a Superfund site. While Judge McClure found such claims to be outlandish, the problem is that an objective ob-

server might reasonably conclude that Judge McClure's perception of the evidence was tainted by his substantial financial interest in a local telephone company that has significant relationships with AT & T. While a reasonable person would not question impartiality in the context of the motor vehicle analogy, a reasonable person might question impartiality in the context of litigation which involves serious accusations, no matter how unsubstantiated those claims may prove to be, against a party that has significant relationships with a company in which a judge holds a substantial ownership interest.

4. The Court in *Liljeberg* specifically suggested that vacatur may be unwarranted in "[l]arge, multidistrict class actions." 486 U.S. at 862 n. 9, 108 S.Ct. at 2203 n. 9.

ings is considered *de novo*, uninfluenced by the manner in which the issues were resolved by Judge McClure, the taint cannot be dissipated.

The prejudice to Nassau and AT & T by a *vacatur* order is undeniable. Clearly, it is in their interests to have much of the summary judgment rulings and discovery decisions remain intact. Vacating prior decisions will engender additional motion practice and undoubtedly delay the resolution of this controversy. But the burden of re-submitting dispositive motions is not inordinate. And the delay, although unfortunate, is not sufficient reason to leave the § 455(a) violation without a complete remedy.

The "interest in avoiding unnecessary, costly duplication of work," 977 F.2d at 785, is not very strong in this case. There are now pending eleven separate reconsideration motions concerning Judge McClure's summary judgment rulings. Thus, Judge McClure's substantive decisions remain subject to additional review in this Court, necessitating almost as much effort as would be expended in considering the matters *de novo*. The incremental additional effort necessary to consider the matters *de novo* does not provide a sufficient basis for leaving the prior rulings intact.[5]

Vacating all prior rulings does not return this case to square one. Enormous amounts of discovery have been completed. The parties have the benefit of the work they did to articulate their positions and have the perspective of one judicial officer's assessment of the evidence amassed to date. Wiping the slate clean is preferable to evaluating each of the rulings in the context of claims of bias or the appearance of impropriety and the impact one ruling may have on another decision. Selective or *ad hoc* reconsideration of prior rulings would prove more cumbersome than setting aside all prior orders.

In sum, the risk of prejudice to the plaintiffs if the rulings issued in this matter remain in force outweighs the risk of prejudice to Nassau and AT & T if those rulings are set aside. Moreover, the risk of prejudice to the plaintiffs cannot be sufficiently ameliorated by either considering prior rulings on an *ad hoc* basis or deferring plenary consideration of summary judgment rulings until after an appeal. Thus, the risk of injustice factor militates in favor of vacating all prior Orders.[6]

The systemic interests pertaining to public confidence in the administration of justice also weigh in favor of vacating the prior rulings. Judge McClure commented that he "would not recuse without a substantial basis therefor...." (November 22, 1994 Memorandum at 11.) That substantial basis for recusal existed as of the date this litigation was reassigned to him. Confidence in and respect for decisions made in the face of a substantial basis for recusal is necessarily undermined. Public confidence in the administration of justice is restored by vacating all orders when the necessity for disqualification is finally appreciated by the recusing judge.

In *Potashnick v. Port City Construction Co.*, 609 F.2d 1101 (5th Cir.1980), *cert. denied*, 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980) the court, in language particularly apropos here, stated:

> Clearly, the goal of the judicial disqualification statute is to foster the *appearance* of impartiality. This overriding concern with appearances, which also pervades the Code of Judicial Conduct and the ABA Code of Professional Responsibility, stems from the recognized need for an unimpeachable judicial system in which the public has unwavering confidence. As this court has noted 'the protection of the integrity and dignity of the judicial process from any hint or appearance of bias is the

---

5. As noted in this Memorandum and in the Order of May 15, 1995, a narrow standard of review is ordinarily applied to a motion for reconsideration. If the strictures governing motions for reconsideration are followed in this case, the taint of the appearance of impartiality would not be removed. If a *de novo* standard of review was applied, the resulting impact on judicial re-

sources would be the same as if the rulings had been vacated.

6. Vacating all Orders will have the beneficial impact of encouraging early disclosure of potential appearances of bias and will prompt recusal decisions to avoid wasted expenditure of scarce judicial resources.

palladium of our judicial system.' Any question of a judge's impartiality threatens the purity of the judicial process and its institutions. *Id.* at 1111.

As then Chief Judge Rogers of the District of Columbia Court of Appeals, now a member of the Court of Appeals of the District of Columbia Circuit expressed, society's expectations of the judiciary are reflected in the following statement by the District of Columbia Board on Professional Responsibility:

> [W]hen one contemplates the essence of judicial office, society commits enormous power into the hands of judges, particularly trial judges, because of an abiding faith that those judges will act impartially and without fear or favor.
>
> \*     \*     \*     \*     \*     \*
>
> Society grants judges such enormous power exactly because of its confidence that judges will act fairly and impartially.
>
> \*     \*     \*     \*     \*     \*
>
> [S]ociety must protect the integrity of the judicial system so that people will submit their disputes to that system and abide by its judgments, at least in part, of their own

free will. *Scott v. United States,* 559 A.2d at 756 n. 21.

The extraordinary act of vacating all prior rulings tainted by the type of appearance of partiality at issue here serves to foster public respect for the judicial system and protect the integrity of the judiciary.[7] I recognized that the avoidance of a risk of prejudice to the plaintiffs and the fostering of public confidence come at a substantial cost in terms of the effort expended to date in this case and impose an enormous burden on strained judicial resources. But I am convinced that, in this case, as in *Moody v. Simmons,* 858 F.2d 137 (3rd Cir.1988), *cert. denied,* 489 U.S. 1078, 109 S.Ct. 1529, 103 L.Ed.2d 835 (1989), the appropriate remedy for the § 455(a) violation is the vacatur of all prior orders issued by Judge McClure in this matter.[8,9]

7. I am keenly aware of the concern expressed by AT & T and Nassau that many of the arguments advanced by plaintiffs in support of their request for recusal and *vacatur* cannot be substantiated. Plaintiffs have responded by demanding discovery and an opportunity to support their assertions. If there was not a substantial basis for the recusal decision in the first instance, the need to engage in discovery and conduct a hearing may be essential. In this regard, fact finding was resorted to in *Liljeberg,* and their was extensive discovery on the disqualification issue in the *School Asbestos Litigation.* In this case, however, there existed an acknowledged substantial basis for recusal. Undertaking discovery and conducting an evidentiary hearing on such a collateral matter would only add to the duration of this already protracted case, require expenditures of client and judicial resources that are better directed at the substantive issues in this case, and ultimately disserve the interests of fostering public support for and confidence in judicial processes.

8. Both in my former career as an attorney who appeared before Judge McClure, and in my present career as his colleague, I have been impressed by his fair-mindedness and his scholarly approach to the difficult issues he must decide. I have the utmost regard for Judge McClure, and consider his integrity unimpeachable. Had I been burdened with this contentious litigation, I

have no doubt that I would have viewed the recusal and *vacatur* requests with the same sense of incredulity and frustration I perceive in Judge McClure's November 22, 1994 Memorandum. I am not so burdened, but instead have the enlightenment of hindsight, which persuades me to grant what admittedly is "a draconian remedy." *Liljeberg,* 486 U.S. at 862, 108 S.Ct. at 2203.

9. As a result of this decision, the pending motions for reconsideration are rendered moot. Moreover, the pending motions *in limine* will be dismissed without prejudice to reasserting those motions after any additional discovery has been completed and anticipated summary judgment motions are decided. The oral argument presently scheduled for May 25, 1995, will be conducted, but the focus will be the parties' arguments concerning the scope of any additional discovery to be conducted prior to the filing of summary judgment motions. In this regard, I reject plaintiffs' suggestion of an "open" discovery period of 120 days. At the May 25, 1995 conference, I intend to hear argument on "the discovery areas" set forth at pages 34 through 41 of the Memorandum in support of the motion for reconsideration of refusal to vacate and any other subject matter areas identified in writing by May 22, 1995. The parties are free to submit written arguments on subject matter areas for additional areas by May 24, 1995. In this regard, telefaxes will be accepted.