Sharon ROHRBACH, et al., Plaintiffs,

v.

AT & T NASSAU METALS CORP., et al., Defendants.

Civil A. No. 3:CV–89–1268.

United States District Court, M.D. Pennsylvania.

Feb. 15, 1996.

Robert J. Sugarman, Sugarman & Associates, Philadelphia, PA, for Sharon Rohrbach, Gary Rohrbach, Saura Rohrbach, Dean Oberst, Deborah Oberst, Ryan Oberst, Thomas Rock, Dorothy Rock, Chester Cenzar, Katherine Cenzar.

Richard H. Willis, Stephen G. Morrison, John S. Williams, Joseph M. Melchers, Lewis Walter Tollison, III, Columbia, SC, Cody H. Brooks, Kreder, Brooks, Hailstone & Lud-

wig, Scranton, PA, for AT & T Nassau Metals Corp.

Andrew J. Primerano, Jr., Kennedy and Lucadamo, Hazleton, PA, for C & D Recycling, Inc., Joseph Benner.

Richard H. Willis, Stephen G. Morrison, John S. Williams, Joseph M. Melchers, Lewis Walter Tollison, III, Columbia, SC, Cody H. Brooks, James J. Wilson, Kreder, Brooks, Hailstone & Ludwig, Scranton, PA, for American Telephone & Telegraph Co.

### MEMORANDUM AND ORDER

VANASKIE, District Judge.

### BACKGROUND

This case stems from the operation of a metals reclamation facility located in Foster Township, Luzerne County, Pennsylvania. Plaintiffs claim to have been injured as a result of exposure to various substances deposited at the site. Defendants American Telephone and Telegraph Company and AT & T Nassau Metals Corporation (collectively referred to herein as "AT & T") are alleged to have "arranged to have material which contained hazardous substances" transported to the site in question.

After superintending this rancorous litigation for more than four years, the Honorable James F. McClure, Jr., by Memorandum and Order dated November 22, 1994, granted plaintiffs' motion for recusal. His decision was based on 28 U.S.C. § 455(a), which, in pertinent part, provides that "[a]ny ... judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." While granting the request for recusal, Judge McClure summarily rejected plaintiffs' request that he vacate the orders that he had entered during the course of this protracted litigation. The case was subsequently reassigned to me.

AT & T moved for reconsideration of the recusal decision. (Dkt. Entry 842.) Plaintiffs moved for reconsideration of Judge McClure's refusal to vacate the orders he

had entered in this matter. (Dkt. Entry 844.)

By Order filed May 15, 1995, I denied the AT & T motion for reconsideration of the disqualification ruling. (Dkt. Entry 863.) In a Memorandum and Order filed on May 17, 1995, I granted plaintiffs' motion for reconsideration and vacated all prior rulings made by Judge McClure in this case.[1]

On June 1, 1995, AT & T moved for reconsideration of the decision to vacate Judge McClure's orders. For the reasons set forth herein, AT & T's motion will be granted.

### DISCUSSION [2]

As AT & T recognizes, the issue before a court on a motion for reconsideration is whether its ruling rested on manifest errors of law or fact or is undermined by new precedent or newly discovered evidence. In this case, AT & T has neither presented new case authority nor submitted previously undiscovered facts. Accordingly, AT & T bears the burden of showing that the decision to vacate Judge McClure's orders rested on clearly erroneous factual findings or " 'a whole-sale disregard, misapplication, or failure to recognize controlling precedent.' " (AT & T Brief in Support of Motion for Reconsideration (Dkt. Entry 874) at 5 (emphasis in original), quoting In re August, 1993 Regular Grand Jury, 854 F.Supp. 1403, 1407 (S.D.Ind.1994)).

### A. The Standard of Review Applied to Judge McClure's Ruling on the Vacatur Issue.

AT & T argues that the narrow standard of review governing reconsideration motions was ignored in deciding to consider de novo Judge McClure's ruling on the vacatur issue. This argument must be rejected for three reasons.

First, the May 17, 1995 Memorandum and Order specifically acknowledged the strictures of judicial review on a motion for reconsideration. See 902 F.Supp. at 527. The

---

1. The May 17th Memorandum is reported at 902 F.Supp. 523.

2. The factual circumstances are set out in the decision reported at 902 F.Supp. 523, and will not be repeated here.

limitations governing motions for reconsideration were thus not ignored.

Second, the narrow scope of review was not mis-applied. Judge McClure's decision on the *vacatur* issue did not evidence a reasoned application of the three-part test to be applied in determining the appropriate relief after it has been determined that recusal is warranted under 28 U.S.C. § 455.[3] Judge McClure's treatment of the *vacatur* issue consisted entirely of the following:

> Such a notion is absurd. A number of discovery and scheduling matters, dispositive motions, etc., have been considered by the Court. Vacating all of our prior orders essentially would restart the case in its entirety. [November 22, 1994 Memorandum (Dkt. Entry 736) at 11.]

Clearly, Judge McClure's reasoning does not reflect a careful consideration of the risk of injustice to the parties by allowing his orders to remain intact; the risk that denial of *vacatur will lead to unjust results in other cases; and the risk of undermining public confidence in the administration of justice.

■ *AT & T insists that proper application of the requisite balancing approach can be deduced* from Judge McClure's ruling.[4] On the question of "prejudice to the parties," AT & T observes that Judge McClure's disavowal of any impropriety or actual bias precludes risk of injustice to the parties. Neither an admission of bias or actual evidence of bias, however, is essential to establish a risk of injustice if the rulings of an otherwise disqualified judicial officer remain undisturbed. As the Supreme Court observed in *Liljeberg*, 486 U.S. at 859, 108 S.Ct. at 2202, "[s]cienter is not an element of a violation of § 455(a)." In *Liljeberg*, the Supreme Court vacated an otherwise final judgment even though the disqualifying circumstance was not appreciated by the judge whose original

judgment was initially upheld on appeal. The Court did so as a remedy for the original judge's failure to disqualify himself based on an appearance of partiality. The Court did not require, as AT & T argues, evidence that the decision of the disqualified judge was "infected by bias." (AT & T Brief in Support of its Motion for Reconsideration (Dkt. Entry 874) at 8.) Accordingly, Judge McClure's disavowal of actual bias does not reflect a proper consideration of the question of whether there is a risk of injustice to the parties if decisions otherwise tainted by an appearance of partiality remain undisturbed.

As to the question of whether Judge McClure actually considered that the risk of denying *vacatur* in this case could lead to unjust results in other cases, AT & T points to Judge McClure's reference to two related cases pending in the Pennsylvania state courts and his assertion that the recusal motion may have been motivated by summary judgment rulings adverse to the plaintiffs. AT & T contends that Judge McClure's decision sent a message that "a litigant cannot escape the decisions of a judge ... acting *without* any *actual bias* by repeatedly making unsupported allegations of bias so that they eventually create a *potential perception* where a judge with a 'heightened sensitivity' is obliged to recuse himself." (AT & T Brief in Support of Motion for Reconsideration (Docket Entry 874) at 10; emphasis in original.) As noted above, however, *actual* bias is not a prerequisite to a *vacatur* decision. As made clear in *Liljeberg*, the risk of injustice in other cases in denying *vacatur* concerns the impact that such a drastic remedy in this case has on future cases to encourage prompt disclosure of possible grounds for disqualification and an early determination of whether there exist grounds warranting recusal.

---

**3.** The three factors to be balanced in determining the appropriate remedy for a violation of § 455(a) are:

(1) The risk of injustice to the parties;

(2) The risk that the denial of *vacatur* will lead to unjust results in other cases; and

(3) The risk of undermining confidence in the administration of justice.

*In re School Asbestos Litigation*, 977 F.2d 764, 785 (3rd Cir.1992). This test was derived from

*Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988).

**4.** It should be noted that Judge McClure's Memorandum did not mention either *Liljeberg*, which established the three-part test, or *School Asbestos Litigation, supra.* Nor did Judge McClure's opinion otherwise refer to the balancing approach established by those cases.

There is nothing in Judge McClure's analysis that suggests he considered this issue at all.

Nor can it be said, contrary to AT & T's assertion, that Judge McClure gave any consideration to the impact of the denial of a decision to vacate on the public confidence in the administration of justice. Judge McClure recused himself "because an objective person might perceive an appearance of impropriety" in his failure to disclose his financial interest in a local telephone exchange carrier. (November 22, 1994 Memorandum (Docket Entry 736) at 11.) There is nothing in his opinion to suggest that he considered whether an objective person might believe that his prior rulings, especially discretionary orders pertaining to discovery, are tainted by those very facts that would cause an objective person to perceive an appearance of impropriety.

In short, the decision to consider the question of *vacatur de novo* was not based upon a patent misapplication of the standards governing motions for reconsideration. Because Judge McClure's decision on this issue did not reflect a balancing of the pertinent factors, *de novo* consideration of the *vacatur* issue was indeed warranted.

■■■ The final reason for rejecting AT & T's contention that vacatur should not have been considered *de novo* is that Judge McClure himself should not have addressed this issue. "As a general rule, a trial judge who has recused himself 'should take no oth-er action in the case except the necessary ministerial acts to have the case transferred to another judge.'" *El Fenix de Puerto Rico v. M/Y JOHANNY*, 36 F.3d 136, 141 (1st Cir.1994). In *El Fenix*, the Court held that a decision by a disqualified judge to vacate the judgment entered in the case "runs afoul of the general rule that the recused judge should take *no further action* except to enable administrative reassignment of the case." *Id.* at 142. Because a judge who has recused himself "acts outside his jurisdiction" in addressing substantive matters after he recognizes that disqualification is warranted, and thus commits "a clear error of law," *Moody v. Simmons*, 858 F.2d 137, 143 (3rd Cir.1988), *cert. denied*, 489 U.S. 1078, 109 S.Ct. 1529, 103 L.Ed.2d 835 (1979), *de novo* consideration of the *vacatur* issue was plainly appropriate.[5]

### B. *Application of the Liljeberg Factors.*

■■ AT & T argues that my *de novo* consideration of the *vacatur* issue reached an inappropriate result. Initially, AT & T contends that *vacatur is inappropriate where a judicial officer is disqualified on the basis of an appearance of partiality. (AT & T Reply Brief (Dkt. Entry 878) at 2–4.)* In support of this assertion, AT & T relies on two pre-*Liljeberg* cases.[6] But *Liljeberg* itself was a § 455(a) case. Since *Liljeberg*, judgments have been set aside solely because an appearance of partiality had warranted recusal. *See, e.g., United States v. Jordan*, 49 F.3d

---

5. In its Reply Brief (Docket Entry 878), AT & T argues that Judge McClure's refusal to vacate his prior Orders became the "law of the case," which could be set aside only "'in unusual circumstances.'" (*Id.* at 11.) As noted in the text, however, having decided to recuse himself, Judge McClure was without jurisdiction to decide the question of *vacatur*. Moreover, the "law of the case doctrine," insofar as it concerns the effect of a predecessor judge's ruling, does not deprive the successor judge of authority to reconsider the prior judge's ruling. *See generally* 1B *Moore's Federal Practice* ¶ 0.404[1] and ¶ 0.404[4.–2] (1995). Our Court of Appeals has recognized a number of circumstances that enable the successor judge to reconsider the predecessor judge's rulings, such as a determination that "'the decision was clearly erroneous and would work a manifest injustice.'" *Schultz v. Onan Corp.*, 737 F.2d 339, 345 (3rd Cir.1984). "The doctrine is not a 'barrier to correction of judicial error.'"

*Id.* In light of the determination that Judge McClure had failed to give requisite consideration to governing factors, the "law of the case doctrine" clearly did not foreclose reconsideration of his ruling. Moreover, our Court of Appeals has recognized that the successor judge may reconsider a prior judge's ruling where the prior judge is no longer available to handle the matter. *See TCF Film Corp. v. Gourley*, 240 F.2d 711, 714 (3rd Cir.1957). Because Judge McClure's recusal decision makes him unavailable, the "law of the case" doctrine did not preclude reconsideration of his decision. *See Carmichaels Arbors Associates v. United States*, 789 F.Supp. 683, 686–87 (W.D.Pa.1992).

6. The cases cited by AT & T are *United States v. Murphy*, 768 F.2d 1518 (7th Cir.1985), *cert. denied*, 475 U.S. 1012, 106 S.Ct. 1188, 89 L.Ed.2d 304 (1986), and *Falconer v. Meehan*, 804 F.2d 72 (7th Cir.1986).

152, 159 (5th Cir.1995); *United States v. Kelly,* 888 F.2d 732, 747 (11th Cir.1989).

Indeed, the Supreme Court's analysis in *Liljeberg* made no distinction between the retroactive relief appropriate in a § 455(a) recusal for appearance of partiality and the relief appropriate for a non-waivable conflict of interest or actual bias disqualification under § 455(b).[7] Several courts have recognized that the same balancing approach applies to both § 455(a) and § 455(b) disqualifications. *See e.g., Polaroid Corp. v. Eastman Kodak Co.,* 867 F.2d 1415, 1421 (Fed.Cir.), *cert. denied,* 490 U.S. 1047, 109 S.Ct. 1956, 104 L.Ed.2d 425 (1989); *Parker v. Connors Steel Co.,* 855 F.2d 1510, 1527–28 (11th Cir.1988), *cert. denied,* 490 U.S. 1066, 109 S.Ct. 2066, 104 L.Ed.2d 631 (1989).

The draconian remedy of *vacatur,* is not, of course, appropriate in every § 455(a) disqualification. *Liljeberg,* 486 U.S. at 862, 108 S.Ct. at 2203–04. AT & T argues that in light of the enormous expenditure of time and money in this case, the extensive investment of scarce judicial resources, and the public perception that the judicial system can be manipulated by attorneys, the *vacatur* ruling, when considered in the context of the grounds for disqualification, was unwarranted.

Plaintiffs maintain that if the factual context for Judge McClure's disqualification ruling does not warrant across-the-board *vacatur,* then they should be able to pursue discovery to flesh out claims of conflict of interest and bias. Plaintiffs insist that in the absence of such discovery, *vacatur* was the only appropriate remedy. (Plaintiff's Brief in Opposition to the Motion for Reconsideration (Dkt. Entry 877) at 3, 4 and 8.)

The positions advanced by both sides have substantial appeal. On the one hand, striking the 58 Orders issued by Judge McClure in a toxic tort case involving disposal of

telecommunication equipment is indeed drastic relief for a failure to disclose a substantial financial interest in a local telephone exchange carrier that is not otherwise implicated in the case.[8] On the other hand, if a stronger showing of conflict of interest or bias is necessary to warrant *vacatur,* then plaintiffs should be able to pursue avenues necessary to make that showing.

*Vacatur* was the remedy chosen because it completely dissipated any taint of partiality in discretionary discovery rulings that shaped the context of summary judgment decision without collateral discovery on conflict of interest and bias claims. *Vacatur* also obviated consideration of whether any decisions reflected bias.

Plenary review of Judge McClure's summary judgment rulings, of course, does provide some safeguard for plaintiffs as to those holdings. *See In re Continental Airlines Corp.,* 901 F.2d 1259, 1263 (5th Cir.1990), *cert. denied,* 506 U.S. 828, 113 S.Ct. 87, 121 L.Ed.2d 50 (1992) ("[t]he risk of injustice to the parties in allowing a summary judgment ruling to stand is usually slight. Such rulings are subject to *de novo* review, with the reviewing court utilizing criteria identical to that used by the Court below.") But largely discretionary discovery decisions are subject only to deferential review. It was this factor that convinced me that "wiping the slate clean" was appropriate in this case. I viewed such a result as "preferable to evaluating each of the rulings in the context of claims of bias or the appearance of impropriety and the impact one ruling may have on another decision." 902 F.Supp. at 531.

It is in approaching the question of *vacatur* with the assumption that prior holdings would have to be examined for bias that I believe I erred in balancing the factors appropriate to fashioning a remedy here. In the Reply Brief in Support of its Motion to Reconsider, AT & T argues that Third Circuit precedent favors *de novo* review of dis-

---

7. Disqualification for an appearance of partiality may be waived. *See* 28 U.S.C. § 455(e).

8. I make this observation in the text with the hope that it will not be selectively quoted out of context by AT & T. Throughout its motion for reconsideration and supporting briefs, AT & T

has quoted excerpts of Judge McClure's ruling and my prior rulings without properly acknowledging the context in which the quoted excerpts were made. Such misuse of observations made in the course of a judicial opinion does little to advance AT & T's cause.

cretionary orders by the disqualified judge, as opposed to wholesale *vacatur*. (Docket Entry 878 at 5–6.) It is clear, as acknowledged in my May 17, 1995 decision, that our Court of Appeals has instructed that "especially in complex litigation, *vacatur* of rulings ought to be as limited as possible while remaining consistent with the purposes of § 455." *School Asbestos Litigation*, 977 F.2d at 786, quoted at 902 F.Supp. at 529. The relief should be that which ameliorates the risk of injustice from a tainted decision while preserving, to the extent practicable, the investment of the parties and the court's resources in the litigation. *Vacatur*, in this case, was not faithful to the Third Circuit's admonition that relief be as limited as possible while preserving confidence in the judiciary.

Specifically, the risk of injustice to the plaintiffs in this case can be avoided by reviewing *de novo* Judge McClure's discovery and scheduling rulings to which exception may be taken, and then reconsidering his summary judgment decisions without vacating them *ab initio*. In this regard, when I issued the *vacatur* ruling, I scheduled argument on the areas of discovery set forth at pages 34 through 41 of plaintiffs' memorandum in support of their motion for reconsideration of Judge McClure's refusal to vacate. I also stated that I would hold oral argument on any other discovery matter identified in writing by the parties. 902 F.Supp. at 532 n. 9. Thus, *de novo* review of prior discovery rulings is essentially consistent with the procedure that was to be followed pursuant to the May 17th ruling. That is, plaintiffs will have full consideration of their discovery contentions but without invalidating each and every discovery ruling.

Because plaintiffs will have a "fresh look" at the scope of discovery and an opportunity to develop additional facts, *vacatur* of Judge McClure's summary judgment rulings at this time is not essential. If additional discovery is permitted, plaintiffs will have the opportunity to seek reconsideration of summary judgment rulings based on newly discovery

evidence. If reconsideration of a summary judgment ruling is sought on that ground or on the basis of intervening precedents, *de novo* consideration of the summary judgment rulings will be appropriate. If plaintiffs are not permitted additional discovery in certain areas or do not seek reconsideration based on newly discovered evidence or intervening precedents, then their interests will be protected by plenary review of Judge McClure's summary judgment rulings on appeal.[9]

■ "The task of fashioning a remedy for a violation of § 455(a) has been delegated by Congress to the judiciary." *United States v. Cooley*, 1 F.3d 985, 998 (10th Cir.1993). "Both the need for finality and a common sense aversion to frittering scarce judicial resources militate against an inflexible rule invalidating all prior actions of a judge disqualified under § 455(a)." *El Fenix*, 36 F.3d at 142. "In fashioning retrospective relief, a court should do so with an eye towards accomplishing a just result." *Cool Light Co. v. GTE Products Corp.*, 832 F.Supp. 449, 459 (D.Mass.1993), *aff'd*, 24 F.3d 349 (1st Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 498, 130 L.Ed.2d 408 (1994). Discretion is to be exercised in such a manner that the interest in obtaining decisions by an impartial judge, untainted by an appearance of partiality, are assured without unnecessarily imposing additional expense and delay in the adjudication of a controversy.

After very careful consideration, I am convinced that wholesale *vacatur* did not properly balance the risk of prejudice to the plaintiffs with the prejudice to the defendants and the risk of undermining public confidence in the administration of justice. I believe that, consistent with *School Asbestos Litigation*, more limited relief in the nature of affording *de novo* review of discovery and scheduling rulings coupled with plenary review of summary judgment decisions challenged on the basis of newly discovered evidence or intervening precedents strikes the proper bal-

---

9. At the time of the May 17, 1995 *vacatur* ruling, there were 11 motions for reconsideration of summary judgment rulings pending, 6 on behalf of plaintiffs and 5 on behalf of AT & T. The parties will be afforded an opportunity to re-file these motions for reconsideration after any additional period of discovery has expired.

ance.[10] Thus, although the litigation slate is not wiped clean, the taint of an appearance of partiality will be removed, while preserving, to the extent appropriate, the enormous expenditure of time, effort and money by the parties and the court in this case.[11]

**ACCORDINGLY, IT IS HEREBY ORDERED THAT:**

(1) The Motion of AT & T Nassau Metals Corporation and American Telephone and Telegraph Company to reconsider and vacate this Court's May 17, 1995 Memorandum and Order (Dkt. Entry 873) is **GRANTED.**

(2) The May 17, 1995 Memorandum and Order, to the extent that it vacated all prior rulings of Judge McClure in this matter, is **VACATED.** In all other respects, the May 17, 1995 Memorandum and Order remains in full force and effect.

(3) A scheduling conference will be conducted on Wednesday, February 28, 1996 at 11:00 a.m. Counsel are encouraged to attend the conference in person.

10.   Contrary to the suggestion at p. 14 of the brief in support of AT & T's motion to reconsider, *de novo* review of Judge McClure's rulings, at least under the circumstances identified in the text, does not present a "no win" situation insofar as the public perception of the administration of justice is concerned. The public should expect that when a judge is disqualified for an appearance of partiality, his or her rulings will be considered anew. The appropriate time to do that with respect to discovery rulings is now. Because discovery decisions will not be reviewed for evidence of bias, the suggestion that disagreement with Judge McClure's exercise of discretion will cause the public to perceive bias is untenable.

11.   AT & T also requested certification of the appealability of the May 17, 1995 Order pursuant to 28 U.S.C. § 1292(b). In light of the decision to grant the motion for reconsideration, the request for certification will be denied.