**COOL LIGHT COMPANY, INC.,**
**Plaintiff, Appellant,**

v.

**GTE PRODUCTS CORPORATION,**
**Defendant, Appellee.**

**Nos. 93–1896, 93–1897.**

United States Court of Appeals,
First Circuit.

Heard Jan. 7, 1994.

Decided May 25, 1994.

Edwin A. McCabe with whom Karen Chinn Lyons, Joseph P. Davis, III and The McCabe Group, Cambridge, MA, were on brief, for appellant.

Allan van Gestel with whom Marie P. Buckley, John B. Daukas, and Goodwin, Procter & Hoar, Boston, MA, were on brief, for appellee.

**350**

Before BREYER, Chief Judge,
TORRUELLA and STAHL, Circuit Judges.

BREYER, Chief Judge.

The appellant, Cool Light Company, Inc. ("Cool Light"), asks for relief from an adverse judgment, Fed.R.Civ.P. 60(b)(6), on the ground that Judge McNaught, the judge who initially tried this case, was prejudiced—or, at least, gave the appearance of prejudice—against it. 28 U.S.C. § 455(a), (b). In deciding whether or not Rule 60(b)(6) relief is appropriate, we have examined the charges and counter-charges of impropriety that have been raised. We have assumed, but purely for argument's sake, that Cool Light could demonstrate a significant degree of partiality (or appearance of partiality) on the part of Judge McNaught. And, we have asked whether any such partiality would justify the type of relief that Cool Light now seeks.

Upon examining the record, we found that Cool Light has already received what was, in essence, a new trial on the key issues and that Judge Keeton (the judge assigned to this matter upon Judge McNaught's retirement) independently reviewed Judge McNaught's decision to grant a new trial. Cool Light would have received *no more* had Judge McNaught decided to recuse himself. And, that being so, we conclude that Judge Keeton's decision not to grant Rule 60(b) relief was lawful.

## I

### Background

#### A

##### The Dispute Between the Parties

In the 1970's, Cool Light tried to develop and sell a special kind of lighting, to be used by film-makers, which would generate less heat than the lighting then customarily used. As part of this effort, Cool Light contacted the appellee, GTE Products Corporation ("GTE"), and the parties discussed the possibility of GTE's developing and supplying the necessary special light reflectors. Cool Light placed purchase orders for reflectors; it later found GTE's reflectors unsatisfactory; it refused to pay money that GTE thought it owed; and GTE stopped supplying the reflectors. Eventually, Cool Light went out of business.

#### B

##### Cool Light's Lawsuit

In 1984, Cool Light filed a lawsuit against GTE. The heart of the lawsuit consisted of a claim that GTE had failed to supply the reflectors it had promised and that, as a result, Cool Light went out of business. In Cool Light's view, the core facts that Cool Light alleged (when supplemented by various alleged subsidiary facts) entitled it to damages under several different legal theories. Cool Light said that GTE's failure to supply proper reflectors 1) violated the express terms of its contract with GTE, 2) violated an implied term in its contract to deal in "good faith," and 3) demonstrated that various GTE pre-contract statements about the reflectors and GTE's plans to produce other lighting products were fraudulent. Cool Light also said that GTE's course of behavior amounted to 4) an unfair trade practice, Mass.Gen.L. ch. 93A, and 5) unfair competition, Cal.Bus. & Prof.Code § 17200. Cool Light tried the first three of these claims to a jury. It tried the latter two claims to Judge McNaught for decision without a jury.

Judge McNaught found against Cool Light on each of the non-jury claims. The jury, however, found in Cool Light's favor on the breach of contract and fraud claims. It assessed damages of $3.694 million for breach of the express terms of the contract; of $2.8 million for breach of the implied "good faith" dealing contract term; and of $9.45 million for fraud. Judge McNaught found that the jury's verdicts were inconsistent. He set them aside and ordered a new trial.

At the second trial, Cool Light waived its right to a jury trial on its contract and fraud-related claims. Both parties asked Judge Keeton—replacing Judge McNaught, who had retired—to make findings of both fact and law, based on the record of the first trial plus the testimony of certain additional witnesses. Judge Keeton did so, and he found in GTE's favor. Cool Light then appealed, claiming that Judge McNaught should have

accepted the jury's findings and not ordered a new trial. After examining the record, we found that the order for a new trial was lawful, and we affirmed the judgment for GTE that Judge Keeton had entered after that new trial. *Cool Light Co. v. GTE Prods. Corp.*, 973 F.2d 31 (1st Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1417, 122 L.Ed.2d 787 (1993).

We add one further background point. Initially, this case involved a further set of claims by Cool Light that GTE had misappropriated various trade secrets and confidential business information. For purposes of expositional clarity, we shall postpone discussion of these claims until Part IIB of this opinion, where we shall explain why their initial presence in this case makes no difference to our result.

### C

#### *Cool Light's Rule 60(b) Motion*

On December 1, 1992, Cool Light moved, under Rule 60(b)(6), for relief from Judge Keeton's judgment. Cool Light said in its motion that jurors from the first trial had contacted Cool Light's owner, George Panagiotou, and Cool Light's lawyer, Edwin A. McCabe, and had told them that Judge McNaught had spoken to the jurors after they had reached their verdict. According to the jurors, the judge told them 1) that he strongly disagreed with their verdict, and 2) that he knew that George Panagiotou previously had been "involved with drugs." Cool Light said that this last mentioned remark (about drug involvement) showed that Judge McNaught was prejudiced against it and meant that Judge McNaught should have recused himself. Cool Light added that, during the first trial, Mr. Panagiotou saw one of GTE's lawyers (belonging to a different law firm than the firm representing GTE on appeal, and once a law clerk for Judge McNaught) enter Judge McNaught's chambers unaccompanied by lawyers for Cool Light. Cool Light concluded that, as a result, it was legally entitled to reinstatement of the first-trial jury verdict, to an independent reexamination of Judge McNaught's new trial determination, and to an independent reexamination of Judge McNaught's determination of the non-jury issues—or, in the alternative, to a new trial.

Judge Keeton denied the Rule 60(b)(6) motion. *Cool Light Co. v. GTE Prods. Corp.*, 832 F.Supp. 449 (D.Mass.1993). He found that his further, and independent, review of the entire record led him to the same conclusion that Judge McNaught had reached, that is to say, had he presided at the first trial, he would have set the jury verdict aside and ordered a new trial. *Id.* at 460. Judge Keeton also said that, had Judge McNaught recused himself as Cool Light says he should have done, Cool Light would simply have received a new trial. *Id.* at 461. He concluded that Cool Light, in essence, had already received that to which the law would entitle it were its claims of impropriety or partiality true. *Id.* at 460–61.

Judge Keeton did not characterize Judge McNaught's alleged remark to the jury either as inappropriate or as proper. He did, however, characterize Cool Light's accusations of misconduct by opposing counsel as "vague and wholly unsupported." He also found that there was "a prima facie basis" for believing that Cool Light, and its counsel, Mr. McCabe, had violated the rules governing "post-verdict contact with jurors." *Id.* at 467. (Subsequently, Bar Counsel wrote to Mr. McCabe stating that "[i]n light of existing . . . case law permitting some level of investigation in response to unsolicited communications from jurors," she was "not pursuing this matter further," though she suggested "that in the future," he "err on the side of caution.")

Ultimately, Judge Keeton entered a final order denying Cool Light's Rule 60(b)(6) motion for relief from judgment. Cool Light now appeals from that order.

### II

#### *The Rule 60(b)(6) Decision*

In reviewing the district court's denial of Cool Light's Rule 60(b)(6) motion, we need not explore the merits of the various claims of impropriety. Indeed, it would be difficult to discover what, in fact, occurred, for the judge in question has died. Rather, for pur-

poses of this appeal, we shall simply assume, for argument's sake, that the judge made the statements that Cool Light attributes to him, and we shall also assume circumstances such that the statements would have called for recusal. *See Liteky v. United States,* —— U.S. ——, —— – ——, 114 S.Ct. 1147, 1155–57, 127 L.Ed.2d 474 (1994). Despite these assumptions favorable to Cool Light, we nonetheless find that the district court's decision to deny the motion lay well within the scope of its broad Rule 60(b) authority. *Cotto v. United States,* 993 F.2d 274, 277 (1st Cir.1993); *Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59 v. Superline Transp. Co.,* 953 F.2d 17, 19 (1st Cir.1992).

## A

### The Parties' Contract and Fraud Disputes

■ Our reasoning in respect to the claims arising out of the basic substantive dispute between the parties is the same as that of Judge Keeton. Had Judge McNaught recused himself, Cool Light would have had a new trial before a different judge. *Pontarelli v. Stone,* 978 F.2d 773, 775 (1st Cir.1992). Cool Light, however, did have a new trial before a different judge. And, the law entitles it to no more.

We recognize that Cool Light suggests the existence of special circumstances requiring a different result. But, we do not agree. First, Cool Light says that it received a new trial only on the counts originally tried to the jury (breach of contract; fraud). It did not receive a new trial on the counts tried to Judge McNaught (unfair trade practices; unfair competition). This argument is not convincing, however, primarily because Cool Light's different judge-tried claims, like its various jury-tried claims, amount to dressing up what are essentially the same facts in different sets of legal clothes. In particular, Judge Keeton's unappealed (second trial) findings that GTE did not cause the harm Cool Light alleged, that GTE had not breached its agreement with Cool Light, that GTE did not commit fraud, and that Cool Light failed to prove damages with sufficient specificity, would collaterally estop Cool Light from successfully arguing the contrary

in any further proceeding related to the judge-tried claims. *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 398–402, 101 S.Ct. 2424, 2427–30, 69 L.Ed.2d 103 (1981); *Sidney v. Zah,* 718 F.2d 1453, 1457–58 (9th Cir.1983); *Itel Capital Corp. v. Cups Coal Co.,* 707 F.2d 1253, 1260–61 (11th Cir.1983); *Hurley v. Beech Aircraft Corp.,* 355 F.2d 517, 522 (7th Cir.), *cert. denied,* 385 U.S. 821, 87 S.Ct. 48, 17 L.Ed.2d 59 (1966). As far as the briefs and papers before us reveal, the overlap between the two sets of claims is such that, given the second trial findings, any further trial on related matters would simply prove "an empty exercise," which circumstance makes appropriate, and lawful, the denial of Rule 60(b) relief. *Cotto,* 993 F.2d at 280; *Superline,* 953 F.2d at 20.

Second, Cool Light suggests that we should not treat Judge Keeton's unappealed second trial findings as binding because it did not know about Judge McNaught's remark either a) when it decided what evidence to present to Judge Keeton, or b) when it filed its appeal. Cool Light has failed to show us, however, how any earlier knowledge could have made a significant difference. Judge Keeton gave Cool Light a full opportunity to present additional evidence at the second trial. Cool Light has not explained how, or why, knowledge of Judge McNaught's remark would have led it to produce significantly different evidence. Nor has it suggested any legal flaw in Judge Keeton's second trial findings. Neither is there any unusual problem in respect to timing. Cool Light, in fact, found out about Judge McNaught's remark after it received our opinion in its first appeal but while its petition for rehearing was pending and about one month before our mandate issued. The consequence of Cool Light's failure to show why earlier knowledge would have mattered, in our view, is that the law would give to Judge Keeton's findings their normal preclusive effect.

Third, Cool Light says that, on grounds of elementary fairness, the remedy for Judge McNaught's "partiality," which (in Cool Light's view) led him to set aside the jury verdict is either 1) simple reinstatement of the verdict or 2) an independent judicial re-

view of the new trial decision. Elementary fairness, however, does not argue for reinstatement of the verdict. Rather, often if not ordinarily, the remedy for a serious procedural flaw is new, better, and fairer procedure, not a monetary award to the losing party. *Pontarelli,* 978 F.2d at 775. Moreover, despite Cool Light's strong contrary protestations, our review of the record indicates that Judge Keeton gave Judge McNaught's "new trial" decision that very new and independent review, with appropriate deference for the jury verdict, for which Cool Light argues. Judge Keeton wrote:

> [W]hen I now make an independent review of the evidence offered in the two trials combined I conclude that the verdict [at the first trial] should have been set aside and, at the least, a new trial should have been granted, if indeed the court did not instead order judgment for the defendant notwithstanding the verdict.

*Cool Light,* 832 F.Supp. at 461.

For these reasons, we consider lawful Judge Keeton's denial of the Rule 60(b)(6) motion, in respect to all counts related to the underlying contract or fraud disputes between the parties.

## B

### *The Trade Secret Claims*

■ Cool Light, in its initial complaint, set forth several other legal claims that we have not yet discussed. Those claims essentially rested upon its assertion that GTE had misappropriated trade secrets and confidential business information. Cool Light set forth several different legal theories that, in its view, entitled it to damages based upon that alleged theft. *See, e.g.,* Plaintiff's Complaint Count IV (Taking of a Trade Secret, Mass. Gen.L. ch. 93 § 42); *id.* Count VII (Unjust Enrichment). As was true of the contract and fraud claims, Cool Light, at the first trial, tried some of its trade secret related claims to a jury and others to the judge.

The trade secret related claims differ from the contract and fraud related claims, however, in that *both* judge *and jury* found against Cool Light on all the claims involving trade secrets. Further, Cool Light chose not to retry the jury-tried claims before Judge Keeton. And, Cool Light has not provided us with any information suggesting that, despite the jury's having found against it in respect to those claims, a new trial would likely produce a different result. Finally, Judge Keeton's binding findings in the second trial, many of which touch on necessary elements of the trade secrets claims, would make it difficult, if not impossible, for Cool Light to prevail in a new trial. The upshot is that Cool Light has not provided us with any reason to believe it has a "potentially meritorious" trade secret related claim, *Superline,* 953 F.2d at 20, or that a new trial on the trade secret related counts would be other than "an empty exercise," *id.* For these reasons, the district court's denial of the Rule 60(b)(6) motion in respect to those claims was legally proper.

The judgment of the district court is

*Affirmed.*