TABER PARTNERS I, Plaintiff,

v.

INSURANCE COMPANY OF NORTH
AMERICA, INC., Defendant.

TABER PARTNERS I, Plaintiff
and Counterdefendant,

v.

MERIT BUILDERS, INC., Defendant,
Counterclaimant & Third-party
Plaintiff,

v.

VICTOR TORRES & ASSOCIATES, INC.
and Desarrollos Metropolitanos, Inc.,
Third-party Defendants.

Civ. Nos. 91–1220(JP), 91–1211(JP).

United States District Court,
D. Puerto Rico.

Nov. 30, 1995.

Rubén T. Nigaglioni, Ledesma, Palou &
Miranda, Hato Rey, P.R., for Plaintiff.

Eric Tulla, Rivera, Tulla & Ferrer, Hato
Rey, P.R., for Defendant.

Edilberto Berríos Pérez, Hato Rey, P.R.,
for Víctor Torres.

Humberto Guzmán Rodríguez, Fiddler,
González & Rodríguez, San Juan, P.R., for
Desarrollos.

### OPINION AND ORDER

PIERAS, District Judge.

On November 15, 1995, the Court held a
Hearing to investigate allegations of juror
misconduct in the form of *ex parte* communi-
cation between an empaneled member of the
jury and an individual who had been excused
from jury service. The five parties were
present during the Hearing, Taber Partners
I (hereinafter "Taber"), Insurance Company
of North America, Inc. (hereinafter "INA"),
Merit Builders, Inc. (hereinafter "Merit"),
Desarrollos Metropolitanos, Inc. (hereinafter
"Desarrollos") and Víctor Torres and Associ-
ates, Inc. (hereinafter "VTA"). For the fol-
lowing reasons, the Court hereby finds that

the allegations of prejudicial contact with the jury are without merit. Therefore, Taber's motion for a new trial based upon juror misconduct (docket No. 550) is hereby **DENIED.**

## I. *TABER'S ALLEGATIONS*

In its motion for a new trial, Taber makes two allegations from which it contends that the jury was biased. First, plaintiff insinuates that the wife and daughter of the president of defendant company, Angela Schlump and Joan Schlump Peters, respectively, intimidated or influenced the jury in a prejudicial manner through their conduct during the trial. Next, Taber alleges that a juror who had been excused from the jury panel engaged in *ex parte* communications with members of the jury prior to the beginning of deliberations, and thereby prejudiced the jury verdict. Taber submitted an affidavit signed by Mr. Eugene Romano, the principal owner and controlling director of plaintiff corporation, with its motion for a new trial stating that he has personal knowledge of the following. An individual juror, Mr. Solivan–Rolán, was excused by the Court from jury service before August 1, 1995. On August 22, 1995, the day before the jury began deliberations, Mr. Romano asserts that he saw Mr. Solivan–Rolán return to the courthouse around 1:30 p.m., and allegedly enter the jury room. Mr. Romano further asserts that he saw members of the jury return from their lunch recess, and enter the passageway that led to the jury room. From these facts, Taber infers that Mr. Solivan–Rolán spoke with members of the jury.

Taber contends that any *ex parte* contact with the jury is presumptively prejudicial. Taber furthermore suggests that Mr. Solivan–Rolán, the juror, was perhaps related to defense witness Juan Gilberto Solivan–Lupianez, who testified in lieu of Mr. A.J. Samaritano on August 4, 1995. From this possible familial relationship, Taber argues that Mr. Solivan–Rolán was prejudiced in favor of defendants and thereby any comments Mr. Solivan–Rolán might have made in the jury's presence could have prejudicially influenced his fellow jurors against plaintiff.

## II. *INA, MERIT AND DESARROLLOS' ALLEGATIONS*

INA, Merit, and Desarrollos (hereinafter referred to collectively as "defendants") oppose plaintiff's motion for the following reasons. First, defendants contend that plaintiff failed to bring this allegation of *ex parte* juror communication to the attention of the Court in a timely manner, therefore plaintiff waived its right to request a new trial. Next, defendants contend that Taber's allegations constitute mere speculation that an *ex parte* communication occurred, and do not sufficiently state that there was actual prejudice of the members of the jury.

## III. *PROCEDURAL BACKGROUND*

In a prior Order, this Court held that Taber's first allegation of juror prejudice involving the allegations of prejudicial behavior by Mrs. Schlump and Mrs. Schlump Peters would not be investigated further for two reasons. *See Order* (docket No. 564).

First, Taber waived its right to move for a new trial by failing to raise this allegation in a timely manner. On June 6, 1995, three jurors brought to the Court's attention their concerns about the behavior of Mrs. Schlump and Mrs. Schlump Peters, wife and daughter of John Schlump, president of defendant company. The Court interviewed these three jurors and found that the behavior of these two women had made the jurors feel ill at ease, and interrupted their level of concentration. *See Order,* docket No. 564, for a copy of the transcript of the record for June 6, 1995. Therefore, the Court ordered that Mrs. Schlump and Mrs. Schlump Peters were barred from the courtroom during the duration of the trial.

Taber did not object to the Court's action in barring these two individuals from the courtroom. It is well settled that "when a trial judge announces a proposed course of action which litigants believe to be erroneous, the parties detrimentally affected must act expeditiously to call the error to the judge's attention or to cure the defect, not lurk in the bushes waiting to ask for another trial when their litigatory milk curdles." *Reilly v. United States,* 863 F.2d 149, 160 (1st Cir.1988).

Taber, however, did not act expeditiously in suggesting that this behavior of these two individuals prejudiced the jury in such a way that Taber could not receive a fair trial. It was not until after the jury had returned its verdict that Taber suggested that it might have been prejudiced by this action.

Therefore, the Court found that "[t]he time for raising this contention of possible juror bias was at the moment in time when it occurred, not after the completion of a fourteen week trial, five days of juror deliberation and an adverse verdict. '[A] party who acquires information supportive of a claim for mistrial or new trial is precluded from such relief if, rather than presenting the matter promptly to the court, the party awaits the outcome of the trial and then, after losing, for the first time moves for relief.' *Cool Light Co. v. GTE Prods. Corp.*, 832 F.Supp. 449, 459 (D.Mass.1993), *aff'd*, 24 F.3d 349 (1st Cir.), *cert. denied*, — U.S. —, 115 S.Ct. 498, 130 L.Ed.2d 408 (1994)."

Moreover, this Court held that this allegation of juror bias was frivolous. Taber argued that the Court should investigate the reasons why two jurors requested to be excused from jury service. These two individuals were two of the three jurors who had brought the disruptive behavior of Mrs. Schlump and Mrs. Schlump Peters to the Court's attention. Taber insinuated that the excusal of these two jurors could have been more than mere coincidence, and requested that the Court further investigate the circumstances surrounding their excusal. Yet, Taber did not present any specific factual basis underlying these allegations. Therefore, these allegations are insufficient to warrant an investigation into facts which could only support a theory of jury prejudice if the Court engaged in the wild suppositions suggested by Taber.

Moreover, Taber's allegations are illogical. If indeed the behavior of Mrs. Schlump and Mrs. Schlump Peters did in fact prejudice the jury, the jury would have been more prejudiced against Merit, than Taber. The behavior of Mrs. Schlump, in staring intensely at the jurors and relentlessly at Mrs. Romano, applauding after her husband's testimony and calling Mr. Eldon Tipping a liar, and making comments throughout the testimony of various witness is obviously neither impartial, nor decorous behavior. This behavior tended to show that Mr. Schlump as a family member of Mrs. Schlump, could have also acted this way, or at least condoned her behavior. Therefore, this behavior reflects poorly upon Mrs. Schlump's husband, the president of defendant company and upon his credibility as a player in the drama that was this litigation.

As to Taber's second allegation of juror misconduct involving an *ex parte* communication between an ex-juror and members of the jury prior to deliberations, this Court held a Hearing on November 15, 1995. The purpose of the Hearing was to "investigate plaintiff's allegations, in order to determine first, whether this alleged incident occurred and if so, whether it was prejudicial. *United States v. Ortiz–Arrigoitía*, 996 F.2d 436, 442 (1st Cir.1993), *cert. denied, Ortiz–Cameron v. United States*, — U.S. —, 114 S.Ct. 1368, 128 L.Ed.2d 45 (1994)." *Order*, docket No. 564. Prior to the Hearing, the parties presented to the Court proposed questions to ask the two witnesses, Mr. Solivan–Rolán, the ex-juror, and Mr. Jesús M. Coriano, Court Security Officer. These two witnesses testified at the Hearing, answering the questions propounded by the Court. The parties were present during the Hearing, however, they did not participate directly in the questioning of the witnesses.

## IV. *FINDINGS OF FACT*

Based upon the testimony of the two witnesses, the Court hereby enters the following finding of facts.

1. On August 22, 1995, on or about 2:30 p.m., Mr. Santos Solivan–Rolán returned to the courthouse and entered the corridor which leads into the jury room of the jury empaneled in the case at bar.

2. Mr. Solivan–Rolán spoke with one of the members of the jury who he identified as a woman juror from Humacao (hereinafter referred to as the "Humacao juror"). The background of their conversation is as follows: Mr. Solivan–Rolán is a self-employed entrepreneur in the business of fixing video

and television equipment. About four weeks prior to August 22, 1995, while Mr. Solivan–Rolán was still a member of the jury, the Humacao juror brought him a video camera to repair. Mr. Solivan–Rolán agreed to examine the video equipment and give her an estimate of the amount of money it would cost to repair the equipment. About two weeks prior to August 22, 1995, while Mr. Solivan–Rolán was still a juror, the Humacao juror informed Mr. Solivan–Rolán that his estimate of the repairs was too expensive, and that he should not continue to repair the equipment. Thereafter, Mr. Solivan–Rolán was excused from jury service due to the personal hardship that jury duty was causing to his video repair business in Aibonito, Puerto Rico. As a self-employed entrepreneur, Mr. Solivan–Rolán depended upon the work he performed in repairing equipment for his salary. The Humacao juror telephoned Mr. Solivan–Rolán to remind him that her video equipment was still in his possession, and that they had to make arrangements for him to return the equipment to her. Mr. Solivan–Rolán informed her over the telephone that he would be attending to other business in San Juan on August 22, 1995, and suggested that he would use that opportunity to drop off the equipment with her.

3. On August 22, 1995, on or about 1:30 p.m. Mr. Solivan–Rolán returned to the courthouse to speak with the Humacao juror in order to finalize the arrangements for the video equipment drop off.

4. Mr. Jesús Coriano, the Court Security Officer in charge of the jury in this case, met Mr. Solivan–Rolán at the beginning of the corridor and escorted him to the entrance of the jury room. Mr. Coriano was present during the entire conversation between Mr. Solivan–Rolán and the Humacao juror.

5. The content of the four to five minute conversation between Mr. Solivan–Rolán and the Humacao juror consists of the following. Mr. Solivan–Rolán informed her that the video equipment was in his van near the courthouse; that the equipment was heavy; and asked her where and when she wanted him to deliver the equipment.

6. Mr. Jesús Coriano offered to permit Mr. Solivan–Rolán to drop off the video equipment in the court security officer station, and that he would then deliver the equipment to the Humacao juror. Mr. Solivan–Rolán and the Humacao juror agreed to this proposition.

7. During the afternoon of August 22, 1995, Mr. Solivan–Rolán dropped off the equipment at the court security officer station. Mr. Coriano delivered the equipment to the Humacao juror on or about August 23, 1995.

8. In addition to this conversation with the Humacao juror, Mr. Solivan–Rolán spoke with four or five members of the jury. These conversations did not extend beyond a greeting between acquaintances.

9. Mr. Solivan–Rolán had no other conversation with any member of the jury empaneled in the case at bar.

10. Mr. Solivan–Rolán did not discuss any aspect of the case at bar with any member of the jury.

11. Mr. Solivan–Rolán did not communicate with any party, any of their representatives, including their lawyers, at any time after August 1, 1995.

12. Mr. Solivan–Rolán is not related through any familial relationship with Mr. Juan Gilberto Solivan–Lupianez, the defense witness who replaced Mr. A.J. Samaritano. Mr. Solivan–Rolán, and Mr. Solivan–Rolán's friends, acquaintances and/or business associates do not know Mr. Solivan–Lupianez.

## V. CONCLUSIONS OF LAW

After considering the undisputed facts and the arguments of the parties, the Court hereby **DENIES** Taber's motion for a new trial.

As a preliminary matter, plaintiff waived its right to request a new trial based upon the allegedly prejudicial *ex parte* communication between a juror and an ex-juror. A waiver is a purposeful relinquishment of an appreciated right, which can be fairly deduced from conduct. *Irons v. FBI*, 811 F.2d 681, 686 (1st Cir.1987). Taber's conduct demonstrates that plaintiff deliberately abdi-

cated its right to a new trial based upon this allegation of juror bias.

Mr. Romano asserted that he personally witnessed what he believed to be an *ex parte* communication, constituting prejudicial contact with a juror, on August 22, 1995. Yet, Taber did not bring this issue to the Court's attention until after the jury had reached its verdict. A party may not wait until they have lost their case to bring a potential issue to the Court's attention. *James v. Watt,* 716 F.2d 71, 77–78 (1st Cir.1983), *cert. denied,* 467 U.S. 1209, 104 S.Ct. 2397, 81 L.Ed.2d 354 (1984). Taber should have raised the possibility of prejudice with the Court the moment that the allegedly prejudicial contact occurred, on August 22, 1995, before the jury began deliberating. At that point in the proceedings, the Court could have interviewed the jurors to determine whether any *ex parte* communication had in fact occurred; whether it was prejudicial; and the extent of the prejudice. It is apparent that Mr. Romano and his counsel "neglected to act with the immediacy that the circumstances obviously required." *In re Cargill, Inc.,* 66 F.3d 1256, 1263 (1st Cir.1995). The Court cannot condone this conduct. A "movant may not hold back and wait, hedging its bets against the eventual outcome," *Apple v. Jewish Hosp. & Medical Ctr.,* 829 F.2d 326, 334 (2d Cir.1987). This only adds to the cost and delay of the civil justice system, and attempts to disrupt the finality of a jury verdict.

■ Moreover, there has been no prejudicial *ex parte* communication with any juror in the case at bar. The testimony of the two witness and undisputed facts, show that there was a conversation between an empaneled member of the jury and an ex-juror, prior to the time when the jury began deliberations. However, there is nothing inherently prejudicial in their conversations, nor is there anything actually prejudicial in their conversations.

In order to prove that members of the jury were prejudiced against Taber based upon the *ex parte* communication, Taber needed to establish two essential elements: that Mr. Solivan–Rolán was prejudiced against Taber, and that Mr. Solivan–Rolán's conversation with members of the empaneled jury concerned the case. Both suppositions are not supported by the undisputed facts.

First, plaintiff attempted to prove Mr. Solivan–Rolán's prejudice based upon an alleged familial relationship with Mr. Juan Gilberto Solivan–Lupianez, a witness for the defense. Mr. Solivan–Rolán himself testified under oath that no such familial relationship exists. In addition, Mr. Solivan–Rolán testified that neither he nor any of his friends, acquaintances or business associates knew Mr. Solivan–Lupianez. Therefore, there are no facts from which one could infer that Mr. Solivan–Rolán was prejudiced against Taber.

Second, Mr. Solivan–Rolán did not engage in any *ex parte* communication with any member of the jury concerning any aspect of the case at bar. On August 22, 1995, Mr. Solivan–Rolán greeted four or five members of the jury. These were individuals with whom he had shared the experience of jury duty for almost three months. On August 22, 1995, Mr. Solivan–Rolán also conversed with a female juror from Humacao. The undisputed facts demonstrate that the only topic of their conversation pertained to a private business transaction between two individuals, a subject matter completely unrelated to any aspect of the case at bar. Therefore, this conversation did not constitute a prejudicial *ex parte* communication with a juror.

## VI. *RULINGS*

■ In the questions that Taber submitted to the Court, Taber proposed that the Court ask Mr. Solivan–Rolán questions pertaining to Mr. Solivan–Rolán's personal data, and whether he had visited the Ambassador Hotel at any time after August 1, 1995. During the Hearing, the Court denied Taber's request to ask Mr. Solivan–Rolán those proposed questions. The specific, narrow purpose of the Hearing was to verify "the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence brought to bear upon any juror," Fed. R.Evid. 606(b). Taber's proposed questions were irrelevant to that issue, and therefore beyond the legitimate scope of the Hearing.

This attempt to interview the jurors post-discharge "in search of some ground, not previously supported by evidence, for a new trial," *O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1310 (5th Cir.1977), is impermissible.

In addition, Taber requested that the Court interview Mr. Juan G. Solivan–Lupianez, the defense witness, and Mr. Javier Ubarri–Mestres and Carmen Báez–Sánchez, two members of the jury who requested to be excused from jury service after the jury had already begun deliberations. In the prior Order, the Court stated that after interviewing Mr. Solivan–Rolán and Mr. Coriano, "... the Court shall be in a position to decide whether any members of the jury or any other individuals should be interviewed to determine whether any extraneous influences prejudiced the jury" (docket No. 564). After hearing the testimony of Mr. Solivan–Rolán and Mr. Coriano, it is not necessary to interview any other individual regarding Taber's allegations of prejudicial *ex parte* communication. Taber has not presented, and is unable to present, any reasonable articulable suspicion as to why the Court should continue its investigation into any allegations of juror bias. As stated in the prior order, "[t]he Court's investigation into plaintiff's allegations of *ex parte* communication shall be narrow in scope, circumscribed by Local Rules of the Court, the Federal Rules of Evidence, and binding legal precedent." These rules and regulations prohibit attorneys from extensively interviewing jurors once the jury has been discharged, and recognize the public policy that prevents the harassment of individuals concerning their performance of a civic duty, and protects the integrity of the jury system by allowing the jury verdict to stand.

Taber wishes to embark upon a fishing expedition, or wild goose chase, to ask jurors anything from which they might later develop an argument which would allow them to attack the jury's verdict. Taber makes wild suppositions and from those it expects the Court to allow far-fetched inferences from which it could create an allegation of juror misconduct or anything which would allow it to "explain" the verdict. This Court, however, will not permit Taber's tactics to continue.

## VII. CONCLUSION

For the foregoing reasons, Taber's motion for a new trial is hereby **DENIED.**

IT IS SO ORDERED.