Charles M. **PAHLER**, Plaintiff,

v.

**CITY OF WILKES–BARRE, Thomas McGroarty, and William Barrett, Defendants.**

**CIVIL ACTION NO. 3:00–1143.**

United States District Court, M.D. Pennsylvania.

Jan. 25, 2001.

Order Denying Reconsideration May 5, 2001.

Anthony J. Mazullo, Jr., Christopher Mazullo, Stengel, Moyer & Mazullo, PC, Doylestown, PA, for plaintiff.

George A. Reihner, John G. Dean, Elliott Reihner Siedzikowski North & Egan, Scranton, PA, for defendants.

*MEMORANDUM and ORDER*

NEALON, District Judge.

Presently before the court is a motion to dismiss pursuant to Federal Rule of Civil Procedure 12 (b)(6) filed on behalf of the defendants on September 5, 2000. (Doc. 12). The defendants filed a brief in support of the motion, along with exhibits, on

September 19, 2000. (Docs. 14 & 15 respectively). The plaintiff thereafter submitted a brief in opposition to the motion on October 12, 2000 (Doc. 16), to which the defendants replied on October 27, 2000. (Doc. 18). Consequently, the motion is ripe for consideration by the court. For the following reasons, the defendants' motion will be granted, and the plaintiff's complaint will be dismissed.

## BACKGROUND

Plaintiff, Charles M. Pahler (Pahler), a Wilkes–Barre police officer, initiated this action by filing a complaint pursuant to 42 U.S.C. § 1983 against the City of Wilkes–Barre (City); its Mayor, Thomas McGroarty (McGroarty); and its Chief of Police, William Barrett (Barrett), on June 26, 2000. (Doc. 1). Each of the individuals is sued individually and in their official capacities. The plaintiff has also invoked this court's supplemental jurisdiction under 28 U.S.C. § 1367(a) by filing a state law claim of negligence against each defendant. *Id.* at pp. 17–18.

The complaint reveals that the City of Wilkes–Barre has an Emergency Services Unit (ESU)[1] encompassed within its Police Department comprised of individuals who are specially trained to manage highly dangerous situations[2] arising in the city. *Id.* at ¶¶ 9, 10, 13. In addition to training, members of the ESU are issued special equipment for use and protection in such situations. *Id.* at ¶ 19. On July 10, 1998, a group of officers including the plaintiff, were called upon to take part in a raid of a

suspected drug dealer's residence. *Id.* at ¶ 16. The ESU, however, was not utilized for the drug raid on that day. *Id.* at ¶ 21. During the course of the drug raid, plaintiff was struck and severely injured with buckshot from a shotgun of a fellow police officer who neglected to set the safety mechanism on the shotgun. *Id.* at 20. Although the ESU was not used in the raid, the individual who discharged the shotgun was a member of that unit. *Id.* at ¶ 21. Insofar as the plaintiff was not a member of the ESU, he was not trained for that unit, was not issued any special equipment, and was not briefed on the unit's tactics. *Id.* at ¶ 4. Up to and including that day, the plaintiff's normal duties were that of a patrol officer patrolling a specific area in a marked Department vehicle. *Id.* at ¶ 17.

Plaintiff avers that the defendants violated his Fourteenth Amendment right to due process by requiring him to participate in a high risk drug raid with officers who were not adequately trained in violation of department policy; by failing to utilize the ESU in the raid; and by failing to adopt a uniform procedure/policy for the mandatory use of the ESU during highly dangerous situations. (Doc. 16, p. 4). The individual defendants are not charged with directing or participating in this particular operation. They are accused of authorizing and permitting untrained personnel to perform in operations requiring ESU personnel contrary to statewide accepted

---

1. The Standard Operating Procedure of the Department defines the ESU as "[t]he Wilkes–Barre Police Department Unit which consists of officers, with special knowledge, weapons, and expertise". The E.S.U. consists of a Commander, an Assistant Commander (if applicable), a Negotiation Team, a Tactical Team, and a Sniper Team. (Doc. 1, Exhibit A, p. 1).

2. The Standard Operating Procedure of the Department defines "highly dangerous situation" as "an incident or situation which by its very nature indicates or may indicate a serious threat to the safety of human life including but not limited to high risk drug raids, high risk fugitive apprehensions, etc." (Doc. 1, Exhibit A, p. 1).

standards for the utilization of such personnel. *Id.*

## DISCUSSION

A court, in rendering a decision on a motion to dismiss, must accept the veracity of the plaintiff's allegations. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *White v. Napoleon,* 897 F.2d 103, 106 (3d Cir.1990). A court should "not inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims." *Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir.1996). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

The test in reviewing a motion to dismiss for failure to state a claim is whether, under any reasonable reading of the pleadings, the plaintiff may be entitled to relief. *See Holder v. City of Allentown,* 987 F.2d 188, 194 (3d Cir.1993) (citation omitted). Additionally, a court must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn from them. *See Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3d Cir.1990); *Indep. Enters., Inc. v. Pittsburgh Water & Sewer Auth.,* 103 F.3d 1165, 1168 (3d Cir.1997).

**3.** Section 1983 provides, in relevant part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution

### 1. Constitutional Claims Under 42 U.S.C. § 1983

To state a viable claim pursuant to 42 U.S.C. § 1983, plaintiff must allege that a person, acting under color of state law, deprived or knowingly caused the deprivation of rights secured by the Constitution.[3] 42 U.S.C. § 1983. "When a public employee asserts a defense of qualified immunity, however, the court must determine as a threshold matter whether the defendant is entitled to that defense."[4] *D.R. v. Middle Bucks Area Vocational Technical Sch.,* 972 F.2d 1364, 1368 (3d Cir.1992), *cert. denied,* 506 U.S. 1079, 113 S.Ct. 1045, 122 L.Ed.2d 354 (1993) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "Until this threshold immunity question is resolved, discovery should not be allowed." *Harlow,* 457 U.S. at 818, 102 S.Ct. 2727. Generally, governmental officials performing discretionary functions are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818, 102 S.Ct. 2727. " 'A necessary concomitant to the determination of whether the constitutional right asserted by the plaintiff is clearly established at the time the defendant acted is the *determination of whether the plaintiff has asserted a violation of a constitutional right at all.*' " *D. R.,* 972 F.2d at 1368 (emphasis in original) (quoting *Siegert v. Gilley,* 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)). "Nor-

and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

**4.** Defendants McGroarty and Barrett assert the defense of qualified immunity to the claims lodged against them in their individual capacities. (Doc. 14, pp. 11–12).

mally, it is only then that a court should ask whether the right allegedly implicated was clearly established at the time of the events in question." *County of Sacramento v. Lewis,* 523 U.S. 833, 841 n. 5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). Adhering to this precedent, the predicate question is whether the plaintiff has alleged a deprivation of any right secured by the constitution. *D. R.,* 972 F.2d at 1368.

Pahler's claim under section 1983 rests on the substantive component of the due process clause of the Fourteenth Amendment. In an effort to demonstrate a constitutional deprivation, the plaintiff has identified two legal theories to which his factual allegations are addressed: (1) state created danger; and (2) failure to train. Each will be addressed in turn.

#### a. State Created Danger

■ In general, state actors have no affirmative obligation to protect citizens from injuries caused by others or themselves. *DeShaney v. Winnebago County Dep't of Soc. Servs.,* 489 U.S. 189, 195–96, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). This general rule is subject to two exceptions: (1) the special relationship exception, which allows the plaintiff to recover when the state enters into a special relationship with a particular citizen and fails to protect the health and safety of the citizen to whom it owes an affirmative duty; and (2) the state created danger exception, which allows the plaintiff to recover when a state actor creates a danger that causes harm to an individual. *Morse v. Lower Merion School District,* 132 F.3d 902, 907 (3d Cir.1997). Here, the plaintiff advances the latter exception.

■ The United States Court of Appeals for the Third Circuit has adopted the "state created danger" theory as a "viable mechanism" for imposing a constitutional violation under 42 U.S.C. § 1983. *Kneipp v. Tedder,* 95 F.3d 1199, 1201 (3d Cir.1996). In order to find someone constitutionally liable under such theory, four elements must be satisfied:

 (1) the harm ultimately caused was foreseeable and fairly direct;

 (2) the state actor acted in willful disregard for the safety of the plaintiff;[5]

 (3) there existed some relationship between the state and the plaintiff; and

 (4) the state actors used their authority to create an opportunity that otherwise would not have existed for the harm to occur.

*Id.* at 1208. Subsequent to the *Kneipp* decision, the United States Supreme Court, in *County of Sacramento v. Lewis,* 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), applied the "shocks the conscience" standard to all substantive due process cases involving abusive executive action. In *Lewis,* the Supreme Court had to decide whether a police officer violated "the Fourteenth Amendment's guarantee of substantive due process by causing death through deliberate or reckless indifference to life in a high-speed automobile chase aimed at apprehending a suspected offender." *Id.* at 836, 118 S.Ct. 1708. Although the Court held that the shock the conscience standard would apply, it also held that the degree of wrongfulness necessary to reach that standard varied under the circumstances of the case. The Supreme Court emphasized that "the measure of what is conscience shocking is no calibrated yard stick." *Id.* at 847, 118 S.Ct. 1708. Moreover, "preserving the

---

**5.** In *Morse,* the Third Circuit identified the second prong of the test as "whether the state actor acted with willful disregard for *or delib-* *erate indifference to* plaintiff's safety." 132 F.3d at 910 (emphasis added) (citing *Kneipp,* 95 F.3d at 1208 & n. 21).

constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience shocking." *Id.* at 850, 118 S.Ct. 1708. In reaching this conclusion, the Court commented that:

The phrase [due process of law] formulates a concept less rigid and more fluid than those envisaged in other specific and particular provisions of the Bill of Rights. Its application is less a matter of rule. Asserted denial is to be tested by an appraisal of the totality of facts in a given case. That which, in one setting, constitute a denial of fundamental fairness, shocking to the universal sense of justice, may, in other circumstances, and in light of other considerations, fall short of such denial.

*Id.* (alteration in original) (quoting *Betts v. Brady,* 316 U.S. 455, 462, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942)). To illustrate this reasoning, the Court compared the position of prison officials, who risk liability when they act with deliberate indifference to a prisoner's medical needs, to that of prison riots. In differentiating the two, the Court noted:

As the very term 'deliberate indifference' implies, the standard is sensibly employed only when actual deliberation is practical, an in the custodial situation of a prison, forethought about an inmate's welfare is not only feasible but obligatory under a regime that incapacitates a prisoner to exercise ordinary responsibility for his own welfare.... But just as the description of the custodial prison situation shows how deliberate indifference can rise to a constitutionally shocking level, so too does it suggest why indifference may well not be enough for liability in the different circumstances of a case like this one. We have, indeed, found that deliberate indifference does not suffice for constitutional

liability (albeit under the Eighth Amendment) even in prison circumstances when a prisoner's claim arises not from normal custody but from response to a violent disturbance. '[I]n making and carrying out decisions involving the use of force to restore order in the face of a prison disturbance, prison officials undoubtedly must take into account the very real threats the unrest presents to inmates and prison officials alike, in addition to the possible harms to inmates against whom force might be used.... In this setting, a deliberate indifference standard does not adequately capture the importance of such competing obligations, or convey the appropriate hesitancy to critique in hindsight decisions necessarily made in haste, under pressure, and frequently without the luxury of a second chance.' We accordingly held that a much higher standard of fault than deliberate indifference has to be shown for officer liability. In those circumstances, liability should turn on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'

*Id.* at 851–52, 118 S.Ct. 1708 (alterations in original) (quoting *Whitley v. Albers,* 475 U.S. 312, 320–21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)). Finally, the *Lewis* Court analogized the facts of its case, a high-speed pursuit, with a prison riot, and asserted that, as in prison riot cases, police involved in a high-speed pursuit of a suspect must make decisions " 'in haste, under pressure, and frequently without the luxury of a second chance.' " *Id.* at 853, 118 S.Ct. 1708 (quoting *Whitley,* 475 U.S. at 320, 106 S.Ct. 1078). Due to the existence of similar circumstances, the Court concluded that "[j]ust as a purpose to cause harm is needed for Eighth Amendment liability in a riot case, so it ought to be needed in for due process liability in a

pursuit case." *Id.* at 854, 118 S.Ct. 1708 (alteration added).

The Third Circuit Court of Appeals recently applied the analysis of *Lewis* in *Miller v. City of Philadelphia,* 174 F.3d 368 (3d Cir.1999), a substantive due process case that did not involve a police chase, a prison riot, or medical needs of prisoners, but a removal of two children from their mother's custody following an emergency *ex parte* hearing. *Id.* at 370–71. In *Miller,* the Third Circuit recognized that *Lewis* requires a court, in all substantive due process cases, to determine if the state actor's behavior shocks the conscience. As in *Lewis,* the court explained that "[t]he exact degree of wrongfulness necessary to reach the 'conscience shocking' level depends upon the circumstances of a particular case." *Id.* at 375. After evaluating the circumstances, the *Miller* court held that "in order for liability to attach, a social worker need not have acted with the 'purpose to cause harm,' but the standard of culpability for substantive due process purposes must exceed both negligence and deliberate indifference, and reach a level of gross negligence or arbitrariness that indeed 'shocks the conscience.'" *Id.* at 375–376. The court reasoned that:

> [w]e recognize that a social worker acting to separate parent from child does not usually act in the "hyperpressurized" environment of a prison riot or a high speed chase. However, he or she rarely will have the luxury of proceeding in a deliberate fashion, as prison medical officials can.

*Miller,* 174 F.3d at 375 (alteration added). Based on this high level of culpability, the court held that there was insufficient evidence of conscience-shocking behavior to support a substantive due process claim. *Id.* at 377.

Inasmuch as the state created danger exception arises from substantive due process rights, it must be determined how the *Lewis* and *Miller* decisions affect the four factor test set forth in *Kneipp.* The court finds the decision of *Cannon v. City of Philadelphia,* 86 F.Supp.2d 460 (E.D.Pa. 2000), instructive. In *Cannon,* the court explained that:

> [t]he second *Kneipp* factor addresses the standard of fault that the plaintiff must prove to trigger liability in a state-created danger claim. This part of the *Kneipp* test required that the state actor acted with willful disregard for or deliberate indifference to plaintiff's safety. *Lewis* and *Miller* require that the actions of the state actor must shock the conscience to trigger § 1983 liability. Therefore, under *Lewis* and *Miller,* in order for the plaintiff to prevail on the second *Kneipp* prong, a plaintiff must prove that the state actor's behavior shocks the conscience. A determination of whether the actions of the state actor shock the conscience requires an evaluation of the context in which they acted.

*Id.* at 469–70 (emphasis added). In essence, in circumstances such as exist here, the second factor of the *Kneipp* test has been replaced by the "shock the conscience" standard, and what rises to that level will ultimately depend on the factual scenario of the case at hand. As such, a court must apply the level of culpability that the facts of the case dictate.

In the matter *sub judice,* the plaintiff claims that the level of culpability needed to shock the conscience under the facts presented is that of "deliberate indifference." (Doc. 16, p. 8). To buttress this position, the plaintiff asserts that in assigning him to participate in a drug raid with untrained and non-ESU personnel, the defendants had "ample opportunity to proceed in a deliberate and informed fash-

ion." *Id.* The decision of which police personnel to utilize for the raid "was not a highly pressurized choice." *Id.* Believing deliberate indifference to be the appropriate level of culpability, the plaintiff maintains that "the defendants' decision to employ untrained personnel for the Hanover Street raid was made with deliberate indifference to Pahler's safety." *Id.* at p. 9. Specifically, the plaintiff asserts that:

> police officials who recognize the need for specialty training in high risk situations and are cognizant of the accepted standard for the management of high risk operations are bound to act in a manner which shows the greatest deference towards their officers' safety absent a compelling governmental interest to the contrary.

*Id.* at pp. 9–10. Regardless of the degree of culpability that should be applied, the defendants contend that the "state created danger" theory does not apply to law enforcement officers who are injured while performing duties associated with their employment. (Doc. 14, pp. 6–7; Doc. 18, pp. 2–6). The court agrees.

In *Rutherford v. City of Newport News,* 919 F.Supp. 885 (E.D.Va.1996), *aff'd* 107 F.3d 867, 1997 WL 82629 (4th Cir.1997), the Newport News Police Department put together a "hastily concocted" sting operation in an effort to apprehend an individual responsible for a series of armed robberies of pizza delivery drivers. *Id.* at 887. The plaintiff, Officer Rutherford, along with his partner, Officer Cioffi, were selected to participate even though they did not have any training or practice in such operations. *Id.* When called for the assignment, Rutherford and his partner were elsewhere filling out paperwork, and worked out the details of the operation among themselves on the way from the pizza shop to make the arranged delivery. While Rutherford was to pose as a pizza driver, Cioffi would provide backup. The three sergeant defendants who ordered the operation were located approximately 175–200 feet away, and were unable to observe the scene of the robbery. Officer Rutherford was not provided with any wire transmitter or electronic device that would permit anyone to monitor the situation. The operation ultimately ended in disaster when Officer Rutherford was shot four times by an assailant and killed. *Id.* at 887–88.

Officer Rutherford's wife then filed suit pursuant to 42 U.S.C. § 1983 alleging a deprivation of her husband's constitutional rights under the substantive due process clause of the Fourteenth Amendment. *Id.* at 888. To be precise, she averred that the defendants "had an 'affirmative duty' to protect Officer Rutherford because they 'created the danger' into which he was required to step on the fateful night—by sending him to the assailants' house without adequate preparation, planning, and backup." *Id.* at 889. The district court dismissed the claim, opining that:

> plaintiff has failed to cite any authority which stands for the precise, and novel, claim urged here: that police officials owe an affirmative duty, based on the Constitution, to ensure that police officers dispatched on dangerous operations are specially trained, fully prepared, and adequately supported in undertaking such a mission. To be sure, as professionals employed in an extremely dangerous occupation, police officials owe it to the men and women serving under them to ensure they have adequate training, appropriate resources, and available backup. That obligation is a professional, and moral, responsibility. Too, there is a duty under state tort law to exercise reasonable care. But regardless of the scope of that obligation, or the fact that the state provides a remedy through workers' compensation,

it does not rise to the level of a constitutional command under the Due Process Clause.

*Id.* at 895. The court went on to explain that:

[t]he sweeping nature of the unique claim pressed by the plaintiff, if adopted, could elevate to a constitutional status hundreds, if not thousands, of decisions taken by governments at all levels regarding the allocation of resources to those employed by the state in dangerous occupations. Policemen, firemen, prison guards, probation officers, security guards, even schoolteachers (who increasingly face threats to their security from their students) would conceivably have a claim against the government whenever the state failed to provide adequate protection or training against known, or foreseeable, risks. Of course, government employees do not lose their constitutional rights once they agree to work for the state. But the Constitution does not guarantee state employees a 'workplace free from unreasonable risks of harm.'

*Id.* at 896 (alteration added) (quoting *Collins v. City of Harker Heights,* 503 U.S. 115, 120, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)). In affirming the district court, the United States Court of Appeals for the Fourth Circuit stressed that "[f]inding a substantive due process obligation under such circumstances would turn every police mishap into a potential source of liability." 1997 WL 82629, *1, 1997 U.S.App. LEXIS 3502 * 5.

A substantive due process claim filed on behalf of a law enforcement officer under the state created danger theory was also rejected in *Hartman v. Bachert,* 880 F.Supp. 342 (E.D.Pa.1995). In *Hartman,* a widow of a deputy sheriff, who was killed by a third party upon whom he was serving an arrest warrant, filed suit alleging that the City of Allentown breached its duty of care by directing an officer to provide "back up" protection, despite the City's knowledge that he lacked experience in dealing with violent persons. *Id.* at 348. The complaint specifically read, in relevant part, that:

44. The Defendants herein, by and through the acts and omissions of Defendants Bachert and Miller, breached their duty of care toward Deputy Hartman, jointly and/or severally by:

A. Failing to provide police personnel properly trained and equipped to provide timely and adequate protection for the Plaintiff/Decedent.

C. Failing to take all necessary and expected action in protecting and defending Hartman from obvious and life threatening harm, specifically including, but not limited to assisting Hartman in the struggle with Parker; apprehending or using necessary force against Parker once he and Hartman had separated; *and the utilization of the Police Department's Emergency Response Team.*

D. Failing to send the most experienced police officer into the building with Hartman as opposed to sending the least and inexperienced police officer, who ended up abandoning his post when the threat of violence occurred.

F. That the Defendants acted with deliberate indifference and disregard of the Plaintiff's/Decedent's health, safety, well-being and life by failing to take other acceptable and appropriate actions which were called for by accepted, established and known police practices and guidelines in which the Police Department failed to engage or undertake, or otherwise failed to train their officers to undertake.

I. Defendants exhibited callous disregard for the life and safety of the Decedent Hartman by sending an inex-

perienced officer into the building with said Deputy, who then abandoned said Deputy for whom he was sent to protect.

*Id.* at 348 n. 6.

Relying on *Collins v. City of Harker Heights,* 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992), the court dismissed the claim on the grounds that the plaintiff's allegations did "not meet the threshold requirements for a § 1983 action." *Hartman,* 880 F.Supp. at 352. *Collins* involved a claim that resulted from the death of a sanitation worker employed by the city who died of asphyxia after entering a manhole to fix a sewer line. In that case, the Supreme Court posed the question whether " § 1983 provides a remedy for a municipal employee who is fatally injured in the course of his employment because the city customarily failed to train or warn its employees about known hazards in the work place" *Collins,* 503 U.S. at 117, 112 S.Ct. 1061. The Court held that "even though the city's conduct may be actionable under state law, ... § 1983 does not apply because such conduct does not violate the Due Process Clause." *Id.* Justice Stevens remarked:

> [n]either the text nor the history of the Due Process Clause supports petitioner's claim that the governmental employer's duty to provide its employees with a safe working environment is a substantive component of the Due Process Clause .... Petitioner's submission that the city violated a federal constitutional obligation to provide its employees with certain minimal levels of safety and security is unprecedented.... Petitioner cannot maintain ... that the city deprived [him] of his liberty when it made, and he voluntarily accepted, an offer of employment.

*Id.* at 126–28, 112 S.Ct. 1061 (alterations added).

As in *Collins,* the *Hartman* court reasoned that the decedent "entered into his duties as a Deputy Sheriff voluntarily and with knowledge of the possible dangers faced by law enforcement personnel." 880 F.Supp. at 351. Furthermore, "[m]ore than the sanitation worker in *Collins,* decedent's job involved routine exposure to danger, and he was aware of the substantial risk of harm faced daily." *Id.* (alteration added). Finally, the court asserted that " '[t]he state did not force appellant to become a [deputy sheriff], and the state has no constitutional obligation to protect him from the hazards inherent in that occupation.' " *Id.* (alterations in original) (quoting *Washington v. District of Columbia,* 802 F.2d 1478, 1482 (D.C.Cir.1986)).

Drawing on the legal principles set forth in *Collins, Rutherford,* and *Hartman,* it is concluded that the "state created danger" theory, arising out of the substantive due process clause of the Fourteenth Amendment, is inapplicable to law enforcement personnel who are injured during the course of their employment. The plaintiff has not referenced any case authority to rebut this conclusion. Like *Collins, Rutherford,* and *Hartman,* the plaintiff in the instant action was not forced to become a member of the Wilkes–Barre Police Department. He entered into that job voluntarily and fully aware of the substantial risks of harm faced on a daily basis. City policemen, unlike private citizens, are constantly faced with dangerous situations in which they risk possible injury. The drug raid on that particular day was one of those situations. Consequently, the court likewise holds that "the state has no constitutional obligation to protect him from the hazards inherent in that occupation." *Hartman,* 880 F.Supp. at 351. Law enforcement officials would be significantly impaired in carrying out their duties if they faced the potential for personal liability for their actions or omissions whenever

junior officers sustain injuries in volatile situations which can develop at any time.

■ Even assuming *arguendo* that the "state created danger" theory applied to facts contained herein, the allegations directed against the defendants would not support a finding that "shocks the conscience." The defendants failure to utilize the ESU to conduct a raid on a suspected drug-dealer's residence [6] can hardly be described as "deliberately indifferent" [7] behavior that shocks the conscience constituting a substantive due process violation. "The Due Process Clause 'is not a guarantee against incorrect or ill-advised personnel decisions.'" *Collins*, 503 U.S. at 129, 112 S.Ct. 1061 (quoting *Bishop v. Wood*, 426 U.S. 341, 350, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976)). As stated in *Collins*:

> [d]ecisions concerning the allocations of resources to individual programs, ... and to particular aspects of those programs, such as training ... of employees, involve a host of policy choices that must be made by locally elected representatives, rather than by federal judges interpreting the basic charter of Government for the entire country.

*Id.* at 128–29, 112 S.Ct. 1061 (alteration added).

There is no contention that this assignment was undertaken for any reason other than to fulfill what the defendants believed was their sworn duty to uphold the law by apprehending a suspected drug dealer. Moreover, there is no indication that Pahler would necessarily be in a better position had the ESU been utilized. Although the ESU was not used in the raid, the individual who discharged the shotgun was a member of that unit. Thus, this injury could clearly have taken place even if the ESU had been employed. *See Hartman*, 880 F.Supp. at 356 (emphasizing that even if the defendant had taken the actions desired by the plaintiff, "it is fully possible that the same tragedy would have occurred").

In sum, as a review of the applicable case law demonstrates, the state created danger theory arising out of the Substantive Due Process Clause of the Fourteenth Amendment does not apply to the plaintiff while functioning as a police officer. Even if the state created danger theory could be applied to police officers, the conduct of the defendants would not support a finding that shocks the conscience. Given these conclusions, it is obvious that there was no clearly established constitutional right of which the individual defendants should have been aware and, thus, they are also entitled to the defense of qualified immunity.

### b. Failure to Train

■ A municipality may be held constitutionally liable under § 1983 for failing to properly train its employees and officers. *City of Canton v. Harris*, 489 U.S. 378, 387, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir.1997). Such a claim, however, is difficult to establish. *Reitz*, 125 F.3d at 145. "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police

---

**6.** The plaintiff avers that the affirmative act which created his danger was the "defendants' decision to utilize non-ESU personnel." (Doc. 16, p. 10).

**7.** The court concurs with the plaintiff's position that the appropriate level of culpability that should be applied to the current factual scenario to determine if the defendants' conduct "shocked the conscience" is that of "deliberate indifference." In applying this standard, the second element of the *Kneipp* test remains in effect.

come into contact." *City of Canton*, 489 U.S. at 388, 109 S.Ct. 1197 (alteration added). Additionally, a mere conclusory allegation that an officer is unsatisfactorily trained will not "suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program. It may be, for example, that an otherwise sound program has occasionally been negligently administered." *Id.* at 390–91, 109 S.Ct. 1197. It also will not "suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury." *Id.* at 391, 1989 WL 14966. More importantly, "adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable." *Id.*

 Additionally, when an individual avers that a "municipality has not directly inflicted the injury, but has caused an employee to do so, stringent standards of culpability and causation must be applied to ensure that the municipality in a § 1983 suit is not held liable solely for the conduct of its employee." *Reitz*, 125 F.3d at 145. Thus, in order to succeed on such a claim, it must be proven that "the training deficiency actually caused the injury." *Id.* (citing *City of Canton*, 489 U.S. at 391, 109 S.Ct. 1197). Stated more accurately, "[a] plaintiff pressing a § 1983 claim must identify a failure to provide *specific* training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." *Id.*

(alteration added) (emphasis added). "To adopt lesser standards of fault and causation would open municipalities to unprecedented liability under § 1983." *City of Canton*, 489 U.S. at 391, 109 S.Ct. 1197.

 Here, the plaintiff seems to assert that the City and its officials failed to properly train members of the ESU in the use of shotguns inasmuch as a member of this unit failed to enable the safety mechanism on his shotgun. (Doc. 16, p. 13). The complaint appears to aver that while members of the ESU should have been used in the raid because they had received special training, the training nevertheless was inadequate as evidenced by the officer's failure to apply the safety lock. (Doc. 1, ¶¶ 15, 20).[8] Despite these blanket and conclusory allegations, the plaintiff has not pled any of the necessary elements to state a claim upon which liability may be imposed against the defendants under the failure to train theory. *See Gonzalez v. Angelilli*, 40 F.Supp.2d 615, 622 (E.D.Pa. 1999) (granting motion to dismiss with prejudice for failure to plead the required elements). The complaint is devoid of any factual averments which would establish that his injuries were caused by the defendants deliberately indifferent failure to train its officers. The plaintiff has neither identified the specific training the city should have offered which would have prevented his injury, nor has he established that such training was not provided. *Reitz*, 125 F.3d at 145. All facts advanced in the complaint appear to support the notion that the individual who engaged in the injurious act was trained in the use of a shotgun, but merely neglected to set the safety device. (Doc. 1, ¶¶ 10, 14, 15, 21). Such conduct does not rise to the level of a constitutional violation under § 1983. *See*

---

8. The court has engaged in a liberal reading of the complaint in attempting to ascertain the precise allegations of the plaintiff's failure to train claim.

*Lewis,* 523 U.S. at 849, 118 S.Ct. 1708 (opining that "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process"). Consequently, the failure to train claim will be dismissed as well.

### 2. Pendent State Law Claim

As previously mentioned, the plaintiff has also invoked this courts supplemental jurisdiction under 28 U.S.C. § 1367(a) by filing a state law claim of negligence against each defendant. Although section 1367(c)(3) provides the court with discretion to exercise supplemental jurisdiction over a state law claim if the court has dismissed all other claims over which it has original jurisdiction, that discretion will not be exercised here. Since the court has dismissed all of the federal claims against each defendant, the pendent state law claims of negligence will likewise be dismissed. An appropriate Order follows.

### ORDER

AND NOW, this day _____ of January, 2001, IT IS HEREBY ORDERED THAT:

1.) The defendants' motion to dismiss (Doc. 12) is GRANTED;

2.) The plaintiff's complaint (Doc. 1) is DISMISSED; and

3.) The Clerk of Court is directed to close the case.

### ORDER

Presently before the court is a motion for reconsideration (Doc. 21) of this court's Memorandum and Order dated January 25, 2001 (Doc. 20), dismissing the plaintiff's complaint for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 21). Said motion was filed on February 5, 2001, followed by a brief in support thereof on February 16, 2001. (Doc. 22). The defendants submitted a response to the motion on March 6, 2001 (Doc. 23), to which the plaintiff replied on March 20, 2001 (Doc. 24). Consequently, the motion is ripe for consideration by the court. For the following reasons, the motion will be denied.

In dismissing the complaint on January 25, 2001, the court concluded that the "state created danger" theory, arising out of the substantive due process clause of the Fourteenth Amendment, is inapplicable to law enforcement personnel who are injured while performing duties incident to their employment. (Doc. 20, p. 13). Alternatively, the court held that even if the aforementioned theory did apply, the allegations directed against the defendants would not support a finding that "shocks the conscience" and, moreover, that the individual defendants were entitled to the defense of qualified immunity. *Id.* at pp. 14–15. Finally, the court found that the plaintiff has not pled any of the necessary elements to state a claim upon which liability may be imposed against the defendants under the failure to train theory. *Id.* at p. 17.

The plaintiff now challenges these findings, and advances the following arguments in support thereof: (1) the court erred in finding that the plaintiff's factual allegations were analogous to the facts presented in *Collins v. City of Harker Heights,* 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992), *Rutherford v. City of Newport News,* 919 F.Supp. 885 (E.D.Va. 1996), and *Hartman v. Bachert,* 880 F.Supp. 342 (E.D.Pa.1995); (2) the court erred in finding that the instant factual scenario amounted to one involving a "hazard inherent" in the plaintiff's occupation as a police officer with the City of Wilkes-Barre; (3) the court failed to consider the allegations that the decision to utilize non-ESU personnel for the drug raid was deliberate and indifferent to the plaintiff's

constitutional rights; (4) the court committed an error of fact because, although the plaintiff alleged that defendants McGroarty and Barrett were personally involved in the drug raid, the court found that "[t]he individual defendants are not charged with directing or participating in this particular operation;" (5) the court's observation, that the injury could clearly have taken place even if the ESU had been employed, is a conclusion directly at odds with the allegations of the complaint in that had the ESU been utilized for the drug raid as required, Pahler would not have participated because he was not a member of that unit; (6) the court erred in refusing to consider and distinguish the cases of *Jensen v. City of Oxnard*, 145 F.3d 1078 (9th Cir.1998), and *Kallstrom v. City of Columbus*, 136 F.3d 1055 (6th Cir.1998); and (7) the plaintiff sufficiently pled a cause of action under a failure to train theory. (Doc. 21, pp. 1–5; Doc. 22, pp. 14–15).

A motion for reconsideration is a device of limited utility. It may be used only to seek remediation of manifest errors of law or fact or to present newly discovered precedent or evidence which, if discovered previously, might have effected the court's decision. *Harsco Corp. v. Zlotnicki*, 779 F.2d 906 (3d Cir.1985) *cert. denied* 476 U.S. 1171, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986). It has also been held that a motion for reconsideration is appropriate in instances such as where the court has misunderstood a party, or has made a decision outside the adversarial issues presented to the court, or has made an error not of reasoning, but of apprehension. *See Rohrbach v. AT & T Nassau Metals Corp.*, 902 F.Supp. 523, 525 (M.D.Pa.1995), *vacated in part on other grounds on reconsideration*, 915 F.Supp. 712 (M.D.Pa.1996). A court must not grant reconsideration when the motion is simply a re-styling or rehashing of issues previously presented.

*McConocha v. Blue Cross and Blue Shield Mutual of Ohio*, 930 F.Supp. 1182, 1184 (N.D.Ohio 1996). "Mere disagreement with the court is a ground for an appeal, not a motion for reconsideration." *Id.* Finally, "Federal District courts should grant such motions sparingly because of their strong interest in finality of judgment." *Continental Casualty Co. v. Diversified Indus., Inc.*, 884 F.Supp. 937, 943 (E.D.Pa.1995).

After careful consideration, the court concludes that it has not committed a manifest error of law or fact, and that the plaintiff has not presented any newly discovered precedent or evidence which may have affected the court's decision. In fact, the plaintiff devotes a substantial portion of his brief to merely rearguing his original position by attempting to distinguish cases that the court has already found persuasive in its original Memorandum. He also tries to reassert his position by citing additional cases that could have been presented to the court during the pendency of the motion.

Furthermore, the plaintiff erroneously claims that the court failed to consider the cases of *Jensen v. City of Oxnard* and *Kallstrom v. City of Columbus*. The fact that the Memorandum did not expressly make reference to these cases does not mean that they were not considered. To the contrary, the cases were evaluated and ultimately dismissed by the court as unreliable. As set forth above, mere disagreement with the court's reliance on certain cases, and exclusion of others, is grounds for an appeal, not a motion for reconsideration.

The plaintiff also argues that the court committed an error of fact in finding that the complaint did not charge that defendants McGroarty and Barrett directed or participated in the particular operation. He further claims that the court commit-

ted another error of fact in concluding that the plaintiff could have been injured even if the ESU had been utilized. While the court may have misinterpreted that portion of the plaintiff's complaint concerning the involvement of McGroarty and Barrett, such factual discrepancy would in no way affect the court's ruling that the "state created danger" theory does not apply to law enforcement personnel who are injured during the course of their employment. Likewise, although the injury to the plaintiff may have been prevented had the ESU been utilized, the court would still find that the decision to employ non-ESU personnel would not support a finding that "shocks the conscience." Consequently, the court adheres to its original decision dismissing Pahler's complaint for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

ACCORDINGLY, this 5th day of May, 2001, IT IS HEREBY ORDERED THAT:

The plaintiff's motion for reconsideration (Doc. 21) of the court's Memorandum and Order dated January 25, 2001 (Doc. 20), is DENIED.